THE PEOPLE, ex rel. THE BOARD OF SUPERVISORS OF THE
COUNTY OF ULSTER, Respondent, *v.* THE COMMON COUNCIL
OF THE CITY OF KINGSTON, Appellant.

Under the statutes regulating appeals to the State assessors from equaliza-
tions made by boards of supervisors, of the valuation of property in
their respective counties (Chap. 312, Laws of 1859 ; chap. 327, Laws of
1873; chap. 351, Laws of 1874; chap. 49, Laws of 1876; chap. 80, Laws
of 1880), where such an appeal is dismissed, the costs and expenses in-
curred by the board may be charged against the town, city or ward ap-
pealing.

Under said acts the employment of necessary appraisers and searchers by
the board at a reasonable *per diem* compensation, and the necessary dis-
bursements in preparing for the investigation are legal items of expenses
chargeable under the statute; and the decision of the board of supervisors—
the auditing board created by the acts — as to the amount and reasonable-
ness of the expenses incurred, in the absence of fraud or collusion, is
final and conclusive.

It was within the power of the legislature to constitute the board of super-
visors a board to audit the expenses chargeable upon the party appeal-
ing. In making the audit the members of the board simply discharge
a duty of public administration, cast upon them by law, and are neither
within the letter nor the spirit of the statute prohibiting a judge from
sitting in a case in which he is a party or is interested.

At a meeting of the board of supervisors of the county of U. bills of ex-
penses, duly verified, incurred by it in equalization proceedings, were
presented. The supervisors and counsel of the city of K., the party
appealing, had notice as early as November thirteenth of the amount of
expenses claimed to have been incurred by the board. On November
twenty-first, the board, then in session, appointed a committee to exam-
ine the bills and report thereon. On December first the counsel for the
city notified the committee that the city desired to be heard. On Decem-
ber third, the committee made a report to the board, and upon its being
read, the supervisors of the city requested that consideration thereof be
postponed until the next day in order to give them time to examine the
bills and present objections; the board, however, proceeded to act upon
the report and made the audit, no specific objections being made by the
city supervisors to any of the items; it was the practice of the board to
adjourn on the fifth. In proceedings by *mandamus* to compel the com-
mon council of the city to levy and collect the sum audited, *held*, that
under the circumstances disclosed, no legal right of the city was invaded
by the denial of the application for delay.

Also *held*, that the board of supervisors had such an interest in enforcing
the collection of the costs that it could authorize the proceedings; that

the expenses, when incurred, were, in the first instance, on its credit, and so were county charges, it simply having a remedy over against the city in case the latter failed on its appeal.

The board passed a resolution on December fourth, authorizing the employment of counsel named, " in all matters in litigation " growing out of the equalization, and authorizing him " to take all necessary and proper proceedings in the name of the board ; " subsequently a committee of its members was appointed with full power to do all things necessary in the litigation. *Held,* that ample authority was thus conferred to institute the proceedings.

The charter of the city provides a special system for the collection of taxes therein. It was objected that the charge against the city could not be enforced. *Held* untenable; that the direction in the act of 1873 (Chap. 327, Laws of 1873), requiring the sum audited by the board of supervisors to be " levied upon the taxable property in said  *  *  *  city," is to be carried out by causing the same to be levied in the usual way provided for levying and collecting taxes in the city.

The city procured a writ of *certiorari* to review the proceedings of the board in auditing the accounts and assessing them upon the city. The writ was dismissed by the General Term. *Held,* that its order was not *res adjudicata* as to the validity of the assessment, as the allowance or refusal of the writ was in the discretion of the court; and that the character of the order as a discretionary one was not altered by the fact that it appears in the opinion of the court that it examined the proceedings and considered them regular.

(Argued October 20, 1885; decided January 19, 1886.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made May 22, 1885, which affirmed an order of Special Term, granting a peremptory writ of *mandamus* herein.

The proceedings were instituted December 6, 1884, the Special Term order directed the issuance of a writ of mandamus commanding the common council of the city of Kingston to levy and collect upon the taxable property of the city the sum of $18,308.07, audited by the board of supervisors December 3, 1883, for costs and expenses incurred by the board on an appeal to the State assessors, taken by the supervisors of the city of Kingston, November 28, 1882, from the equalization of the valuation of the real and personal property of the several towns and wards in the county of Ulster, made by the

board of supervisors at its annual session in that year. The appeal came on to be heard before the State assessors, and was dismissed November 16, 1883.

The board of supervisors on the 29th of November, 1882, after said appeal was taken, appointed a committee to take charge of the interests of the board on the appeal, with power to employ counsel, and such clerical and other assistance as the committee should deem necessary, and take such measures and incur such expenses as their counsel might advise, or as they should deem meet and proper in the premises. Pursuant to this authority counsel were employed, and upon their advice the committee caused abstracts to be made of all conveyances recorded in the clerk's office of Ulster county, for the period of five years, commencing January 1, 1878, stating the consideration named in each case. The expense of obtaining these abstracts exceeded $2,000. The committee also, by advice of their counsel, caused an appraisal to be made of each parcel of land, of which there was a several ownership in the county of Ulster, by appraisers appointed by them for each town and ward in the county (there being sixty-three appraisers in all), at an expense of $9,570.03. Other expenses were incurred for clerical and other work, stenographers' fees, house hire, printing, etc., including the sum of $1,227.84, for special services of persons who at the time were members of the board of supervisors. The aggregate expenses, including therein $4,500 for services of counsel, as audited by the board of supervisors December 3, 1883, after the decision of the State assessors, amounted to the sum of $21,446.99. The town of Marbletown also appealed from the equalization of 1882, which appeal was taken at the same time, as the appeal by the city of Kingston, and the two appeals were carried along concurrently, and were heard together by the State assessors, with the same result in each case. The board of supervisors, upon auditing the costs and expenses as above stated, apportioned them as between the town of Marbletown and the city of Kingston, upon the basis of the total equalized valuation of the town and city respectively — the sum of $18,337.18, be-

ing apportioned as the share of the city of Kingston, and the sum of $3,109.81, as the share of Marbletown.  Prior to the decision of the State assessors, the board of supervisors and the city of Kingston respectively submitted to the assessors a statement in detail of the expenses incurred by each.  The statement of the board of supervisors corresponded in the aggregate with the sum as audited December 3, 1883, to-wit, $21,446.99, and the expenses incurred by the city, as presented to the assessors, amounted to about the sum of $18,800.  Prior to the audit, and on the 21st of November, 1883, the board of supervisors (being then in session) appointed a committee to examine the bills of expenses incurred by the board on the appeals in the equalization proceedings, and to report.  The bills prior to that time had been duly verified by the several claimants, and presented to the State assessors, and had been certified as correct by the committee originally appointed to act in behalf of the board, and it appears by uncontradicted evidence that the supervisors of Kingston and the counsel for the city, as early as on the 13th of November, 1883, were informed of the amount of expenses claimed to have been incurred by the board of supervisors.  On the 1st of December, 1883, the counsel for the city notified the committee appointed November 21, 1883, that the city desired to be heard upon the matter of the audit, and to give testimony in respect to the bills presented.  On the 3d of December, 1883, the committee reported to the board, and on the report being read, the supervisors of Kingston requested the board to postpone the consideration until the next day, in order to give them time to examine the bills and make such objections as they might desire.  The board, however, proceeded to act upon the report, and made the audit as before stated.  No specific objections were made by the supervisors of Kingston to any of the items.  It appears that it was the practice of the board of supervisors at its annual session to adjourn from the fifth of December to the fifteenth, to enable the clerk to prepare the tax warrants for delivery to the proper officers.  The return of the board of supervisors in the *certiorari* proceedings hereafter referred to and which is in evidence in

the case, states that the application for delay was regarded as not having been made in good faith, but to prevent the auditing of the bills at that session of the board. On the 7th of December, 1883, the city of Kingston procured a writ of *certiorari* to be issued to review the proceedings of the board of supervisors upon the matter in question. The affidavits used on the application for the writ show that the supervisors of Kingston at that time had full knowledge of the contents of the bills. The board of supervisors made return to the *certiorari* and it was dismissed by the Supreme Court, May 31, 1884. An appeal was taken by the city to the Court of Appeals, and that court having intimated on the argument that the order in the form in which it was made was not appealable, permitted the appeal to be withdrawn, with a view to an application to the court below for an amendment of the order, which application, however, on being made, was denied. Subsequently, and on December 4, 1884, the prior litigation having been ended, the board of supervisors, by resolution, directed that so much of the sum of $21,446.99 originally audited, as was audited to persons who were supervisors, viz., $1,246.09, be levied and assessed on the county outside of Marbletown and Kingston, and that of the balance of said amount, $17,271.77, with interest, making in all $18,308.07, " be raised, levied and assessed" upon the taxable property of the city of Kingston, and paid to the treasurer of the county. This sum was on the 5th of December, 1884, included in the schedule of amounts to be raised for State and county expenses by the city of Kingston and delivered by the board of supervisors to the defendant on the same day. The common council directed the raising of the amounts of the other items in the schedule, but omitted to take any action in respect to this item. The *mandamus* proceedings were commenced December 6, 1885. It is claimed that they were instituted without the authority of the board of supervisors.

*John J. Linson* for appellant. The final order complained of is appealable to this court. (Code of Civ. Pro., § 190, subd.

3; *People* v. *Common Council,* ·78 N. Y. 56.)   The questions raised by the defendant as to the power of the board of supervisors to make the alleged audit on which the proceeding is based, in the manner and under the circumstances in which this audit was made, are reviewable in this proceeding.   (*People* v. *Supervisors,* 73 N. Y. 173 ; *People* v. *Lawrence,* 6 Hill, 244 ; *Hodges* v. *Buffalo,* 2 Denio, 110 ; *Holstead* v. *Mayor,* 3 N. Y. 430 ; *People* v. *Stout,* 23 Barb. 349.)   There is nothing in the proceedings by *certiorari* to constitute an adjudication as to the validity of the relator's claim.   (*People* v. *Stilwell,* 19 N. Y. 531 ; *People* v. *Hill,* 53 id. 547 ; *People* v. *Bd. Com'rs,* 77 id. 605 ; *People* v. *Bd. Com'rs,* 82 id. 506.)   The audit of the board of supervisors was void because of their refusal of a hearing. (*In re Murphy,* 24 Hun, 592; *People* v. *Town Auditors,* 82 N. Y. 80 ; *People* v. *Supervisors,* 45 id. 196 ; *People* v. *Supervisors,* 30 How. Pr. 173 ; *People* v. *Supervisors,* 21 id. 322 ; *Chase* v. *Saratoga Co.,* 33 Barb. 603 ; Bouv. L. Dict., tit. " Audit ; " Comyn's Dig., tit. " Account," 7, 8; *Stuart* v. *Palmer,* 74 N. Y. 183.)   If the statute assumes to give the board of supervisors power to audit or tax their own costs and expenses it is unconstitutional and void.   (Cooley on Const. Lim. 175, 410 ; *Lanfear* v. *Mayor,* 4 La. 87 ; 23 Am. Dec. 477 ; *W. Ins. Co.* v. *Price,* 1 Hopk. Ch. 1 ; *Dimes* v. *Prop'rs Gd. Junct. Canal,* 3 H. of L. Cas. 759; *Hall* v. *Thayer,* 105 Mass. 219; *Peck* v. *Essex,* 20 N. J. 457 ; *Dively* v. *Cedar Falls,* 21 Iowa, 565 ; *In re New Boston,* 49 N. H. 328.)   The terms " costs " and " expenses " ·are practically synonymous, meaning only such disbursements as are recognized by law and the rules and practice of the courts.   (2 Coke's Inst. 112; Stat. of Marlb., chap. 6 ; id. 288; 6 Viner's Abr. 321 ; 2 Bacon's Abr. 33 ; 3 Comyn's Dig. 230 ; *Downing* v. *Marshall,* 37 N. Y. 380 ; *Onondaga* v. *Briggs,* 3 Denio, 174 ; *Hovey* v. *Hovey,* 5 Paige, 551 ; *Doe* v. *Green,* 2 id. 347 ; *Rogers* v. *Rogers,* id. 458 ; *N. Y. L. Ins. & T. Co.* v. *Davis,* 10 id. 507 ; *Lampman* v. *Hand,* 4 id. 120 ; *Denniston* v. *Vischer,* 5 id. 61 ; *Adams* v. *Stevens,* Clark's Ch. 536 ; *Whittimore* v. *Whittimore,* 7 Paige, 38 ; *Mark* v. *Buffalo,* 87 N. Y. 189 ; *Rothery* v. *N. Y. Rubber Co.,* 24

Hun, 172; *Provost* v. *Farrell,* 13 id. 303; *Simer* v. *Mayor, etc.,* 3 Law Bull. 51; *Haynes* v. *Mosher,* 15 How. 216; *Case* v. *Price,* 17 id. 351; *Havel* v. *Cockroft,* 9 Bosw. 479; *Perry* v. *Griffin,* 7 How. 263; *Arnoux* v. *Phelan,* 21 id. 88; *Gilman* v. *Oliver,* 14 Abb. Pr. 174.) It was error for the board of supervisors to audit and allow bills presented by its own members for committee work and other services connected with the litigation. (*Bd. of Sup'rs* v. *Van Clief,* 1 Hun, 554; *People* v. *Lawrence,* 6 Hill, 244; *Halstead* v. *Mayor,* 3 N. Y. 430; *People* v. *Stoudt,* 23 Barb. 349; *Chemung Bk.* v. *Sup'rs,* 5 Denio, 517.) The order appealed from should be reversed because the board of supervisors of the county of Ulster never authorized nor directed this proceeding to be brought. (Subd. 1, § 1, art. 1, tit. 1, chap. 12, part 1, R. S.; 2 R. S. [7th ed.] 924; subd. 4, § 4, art. 1, tit. 2, id., 2 R. S. [7th ed.] 926; § 5, id.; Cooley on Const. Lim. 204; Dill. on Mun. Corp., § 60; *Bd. of Excise* v. *Sackrider,* 35 N. Y. 154; *Thompson* v. *Schermerhorn,* 6 id. 92; *Lyon* v. *Jerome,* 26 Wend. 485; *Bellinger* v. *Gray,* 51 N. Y. 610; *Davis* v. *Read,* 65 id. 566; *Powell* v. *Tuttle,* 3 id. 396; *People* v. *Mut. U. Tel. Co.,* 2 McCarty's Civ. Pro. 295; *Ruggles* v. *Collier,* 43 Mo. 359; *St. Louis* v. *Clemens,* id. 395; *Hydes* v. *Joyes,* 4 Bush, 464; *State* v. *Jersey City,* 1 Dutch. [N. J.] 309; *S. C.,* 2 id. 444; *State* v. *Paterson,* 34 N. J. Law, 163; *White* v. *Mayor,* 2 Swan, 364; *Smith* v. *Morse,* 2 Cal. 524; *Oakland* v. *Carpentier,* 13 id. 540; *Day* v. *Green,* 4 Cush. 433; *Coffin* v. *Nantucket,* 11 id. 433; *Clark* v. *Washington,* 12 Wheat. 40; *Ry. Co.* v. *Baltimore,* 21 Md. 93; *McInery* v. *Reed,* 23 Iowa, 410; *State* v. *Fisk,* 9 R. I. 94.) The order should be reversed, because it is an attempt to have the courts legalize an unlawful act of the relators, and compel an unlawful act of the defendants. (§ 2, art. 1, tit. 1, chap. 12, part 1, R. S.; 2 R. S. [7th ed.] 924; *People* v. *Lawrence,* 6 Hill, 244; *Chemung Bk.* v. *Sup'rs,* 5 Denio, 517; *Sup'rs Richmond* v. *Ellis,* 57 N. Y. 620.) The grant of power to a municipal corporation to tax must be plainly and unmistakably conferred and strictly pursued. (*U. S.* v. *Mayor, etc.,* 2 Am. L. Reg. [N. S.] 394;

Dill. on Mun. Corp., § 605; *Sharp* v. *Spier*, 4 Hill, 76 ; *Burnett* v. *Buffalo*, 17 N. Y. 383 ; *Howell* v. *Buffalo*, 15 id. 512; *Beatty* v. *Knowles*, 4 Pet. 152.)    The board of supervisors of the county of Ulster has no interest in this proceeding nor in the relief demanded, hence it has no standing as a relator. (*St. Joseph* v. *Rogers*, 16 Wall. 644 ; *Police Jury* v. *Britton*, 15 id. 566 ; *Parker* v. *Loomis*, 6 Hill, 463 ; *Wilson* v. *Shreveport*, 29 La. Ann. 673 ; *Gause* v. *Clarksville*, 5 Dill. 165 ; *Brady* v. *Sup'rs*, 2 Sandf. 460 ; 6 N. Y. 260.)    The order is in conflict with the well settled principle that *mandamus* will only lie where there is no other legal remedy.    If the city is liable, the owners of claims can maintain an action against it upon them.    (*Buck* v. *City of Lockport*, 43 How. Pr. 361; *People, ex rel. Guidet*, v. *Green*, 66 Barb. 630; *Marsh* v. *Little Valley*, 64 N. Y. 112.)

*Alton B. Parker* for respondent.    The audit of the board of supervisors having been reviewed in a direct proceeding by *certiorari*, it is now *res adjudicata* and cannot be considered collateral proceeding.    (Laws 1873, chap. 327 ; Laws 1874, chap. 351; Laws 1880, chap. 80 ; *Mercein* v. *People*, 25 Wend. 64 ; Tidd's Pr. 1051, 1138; Caines, 182; 20 Johns. 80; *Matter of Price*, 12 Hun, 508.)    The judgment of a court or body of competent jurisdiction cannot be questioned in a collateral action or proceeding.    (*De Renner* v. *Cautillion*, 4 Johns. Ch. 85 ; *Shallenkirk* v. *Wheeler*, 3 Johns. 275 ; *Hadley* v. *Mayor*, 33 N. Y. 603; *Morewood* v. *Corporation of N. Y.*, 6 How. 386.)    Matters once directly decided by a court of competent jurisdiction shall not again be questioned while that decision remains in force, except by a court having powers to review such decision, and in the proper proceeding for that purpose. (*Broadhead* v. *McConnell*, 3 Barb. 175 ; *Gardner* v. *Buckbee*, 3 Cow. 120 ; *Wood* v. *Jackson*, 8 Wend. 1 ; *Lawrence* v. *Hunt*, 10 id. 80 ; *People* v. *Collins*, 19 id. 56; *Mercein* v. *People*, 25 id. 64 ; *People* v. *Bennett*, 13 Abb. 8.)    The judgment or decree of a court possessing competent jurisdiction is not only final as to the subject-matter thereby determined, but also as to

every other matter which the parties might litigate in the cause and which they might have decided. (*Masten* v. *Olcott*, 60 How. 105 ; *Malloney* v. *Horan*, 49 N. Y. 116; 1 Johns. Cas. [Shephard's ed.] 492, note ; *Le Guen* v. *Governeur*, 1 Johns. Ch. 436.) The judgment and audit standing unreversed is *res adjudicata* as between the parties and conclusive upon them. (*Cooper* v. *Platt*, 13 J. & S. 242; *Blair* v. *Bartlett*, 75 N. Y. 150 ; *Kelsey* v. *Murray*, 49 Barb. 231 ; *Matter of Roberts*, 8 Daly, 95 ; *Brown* v. *Landon*, 30 Hun, 57.) It was the duty of the board of supervisors to defend their act and decision in the making of the equalization appealed from. (2 R. S. [7th ed.] 996 ; Laws of 1859, chap. 312; Laws 1880, chap. 269 ; 1 R. S. 364, § 4 ; *Brady* v. *Sup'rs*, 2 Sandf. 460 ; *People* v. *Sup'rs*, 85 N. Y. 328 ; chap. 327, Laws of 1873.) It was the duty or office of the board of supervisors to contest the appeals ; it was their duty to incur the necessary expense to defend, and as between the board and its employes the expense becomes a county charge. (R. S. [Edm. ed.] 357, 358, § 3, subd. 15 ; *Bright* v. *Sup'rs*, 18 Johns. 242 ; *People* v. *Sup'rs*, 12 Wend. 257 ; *Doubleday* v. *Sup'rs*, 2 Cow. 533 ; *Brady* v. *Sup'rs*, 2 Sandf. 460 ; *People* v. *Sup'rs*, 45 N. Y. 196; *Bright* v. *Sup'rs*, 18 Johns. 242.) The board of supervisors had the power to employ persons to render such service as they deemed necessary to have rendered and performed for the benefit of the county in the preparation for trial and the hearing, and its contracts made therein are binding upon the county. (R. S. [7th ed.] 924, chap. 12, tit. 1, art. 1 ; *People* v. *Sup'rs*, 45 N. Y. 194.) The appeals not being sustained, the statute made it the duty of the board of supervisors to audit the costs and expenses arising therefrom and connected therewith. (Chap. 327, Laws 1873 ; chap. 351, Laws 1874 ; chap. 80, Laws 1880; chap. 327, Laws 1883; *Matter of Murphy*, 24 Hun, 594; *People* v. *Sup'rs*, 30 How. 173; *Chase* v. *Saratoga Co.*, 33 Barb. 603.) Their act in examining and allowing accounts chargeable to the county is a judicial act, and the decision is binding upon all parties concerned. (*People* v. *Stocking*, 50 Barb. 573; *Chase* v. *Saratoga Co.*, 33

id. 603; *Sup'rs* v. *Briggs*, 2 Denio, 26; *People* v. *Sup'rs*, 1 Hill, 195; *Brown* v. *Greene*, 46 How. 302; *People* v. *Greene*, 47 id. 382; *Baldwin* v. *Sup'rs*, 12 id. 204; *People* v. *Sup'rs*, 58 Barb. 145; *People* v. *Sup'rs*, 21 How. 322; *S. C.*, 24 id. 119; *People* v. *Green*, 56 N. Y. 466; *Huff* v. *Knapp*, 5 id. 67; *Brady* v. *Sup'rs*, 10 id. 260; *People* v. *Lawrence*, 6 Hill, 244; *Sup'rs* v. *Briggs*, 2 Denio, 26; *Martin* v. *Sup'rs*, 29 N. Y. 647; *Sup'rs* v. *Ellis*, 39 id. 626; *Nat. Bk.* v. *City of Elmira*, 53 id. 53; *People* v. *Stephens*, 75 id. 527; *In re Tinley*, 90 id. 231.) The judgment of a court of competent jurisdiction cannot be questioned in a collateral action or proceeding. (*De Riemer* v. *Cautillion*, 4 Johns. Ch. 85; *Hadley* v. *Mayor, etc.*, 33 N. Y. 603; *Morewood* v. *Corporation of N. Y.*, 6 How. 386.) The audit and levy having been made by the officers designated by statute for that purpose and in the manner directed by statute, the court will enforce collection. (Potter's Dwarris on Stat. and Const., 123; chap. 80, Laws of 1880, § 15; 2 Dill. on Mun. Corp. 758; *People* v. *Common Council*, 22 Barb. 404.) The proceeding by *mandamus* is the proper and only remedy. (2 Dill. on Mun. Corp. 757; *People* v. *Sup'rs*, 10 Wend. 363; *People* v. *Common Council*, 22 Barb. 404.) The board of supervisors is the proper party relator. (Chap. 12, tit. 1, art. 1, p. 924, R. S. [7th ed.]; *People* v. *Halsey*, 37 N. Y. 347.) The counsel for the respondent had authority to appear for the board of supervisors on the application for *mandamus*. (R. S. [7th ed.] 924; 3 Hun, 407; *Downing* v. *Rugar*, 21 Wend. 178; *Commissioners of Excise* v. *Sackrider*, 35 N. Y. 154.)

ANDREWS, J. The order made by the General Term on the return to the writ of *certiorari*, was not *res adjudicata* as to the validity of the assessment. It did not affirm or reverse the proceedings, but dismissed the writ. The allowance or refusal of a common-law *certiorari*, rests in the sound discretion of the court. The dismissal of the writ was an exercise of this discretion, and the character of the order, as a discretionary

one, is not altered by the fact that the court, in its opinion, examined the proceedings and considered them regular. (*People* v. *Stilwell*, 19 N. Y. 531; *People* v. *Hill*, 53 id. 547; *People* v. *Board of Commissioners, etc.*, 82 id. 506.) It is claimed in behalf of the city of Kingston, that the statute regulating appeals to the State assessors, from the equalization of the board of supervisors, does not on the appeal being dismissed, authorize the charging against the town, city, or ward appealing the costs and expenses incurred by the board of supervisors in defending the appeal. This depends upon the construction of the statutes regulating this proceeding. The right of appeal from an equalization made by a board of supervisors, was first given by chapter 312 of the Laws of 1859. Under that act an appeal was authorized to be taken by the supervisors of any town, city, or ward, to the State comptroller, who was authorized to determine what deduction, if any, ought to be made from the valuation fixed by the board of supervisors, of the property of the town, city, or ward (§ 13). No provision was made in this act for costs to either party. The act of 1859 was first amended by chapter 327 of the Laws of 1873. This act added a section to the original act as follows: " § 15. Whenever an appeal shall not be sustained, the costs and expenses arising therefrom and connected therewith, shall be a charge upon the town, city, or ward so appealing, which shall be audited by the board of supervisors, and levied upon the taxable property in said town, city, or ward." This provision remained unchanged up to the time of the audit in question. It will be observed that the act of 1873 made no provision for costs and expenses, in case the appeal is sustained. This was first provided for by chapter 351 of the Laws of 1874, which added a clause to section 15, making it the duty of the comptroller, in case the appeal is sustained, to certify the reasonable costs and expenses of the appellant, and providing that the amount so certified should be audited by the board of supervisors and collected from the towns and cities in the county, other than the appellant. The act, chapter 80 of the Laws of 1880, further amended section 15, by substituting

the State assessors as the certifying body in place of the comptroller, and also providing that in the appeal is sustained the costs and expenses of both appellant and respondent should be audited and collected from the towns and cities other than the appellant.    This was the condition of the legislation on the subject of costs and expenses on appeals in equalization proceedings, in 1883, when the audit in question was made.

The precise contention of the city of Kingston, as we understand it, is, that the provision in the act of 1873 was not intended, in case the appeal was not sustained, to charge the costs and expenses incurred by the board of supervisors against the appealing town, city, or ward, but was intended simply to protect and indemnify the supervisor by whom the appeal was brought, against the costs and expenses incurred by him in behalf of his town, and to put it out of the power of the town authorities to repudiate the claim, and saddle upon the supervisor the burden of the costs and expenses of the litigation.    This construction has no support in the language of the act of 1873, and still less in the legislation which followed it. The acts of 1874 and 1880 expressly give costs to the appellant as against the county in case the appeal is sustained, and it is quite difficult to suggest any reason for exempting the town, ward, or city from a corresponding liability where the appeal fails.    The construction of the act of 1873 contended for by the appellant is strained and unnatural, and moreover, if the intention of the legislature was, as is claimed, to protect the supervisor as against the town, the act failed to afford complete protection, because it makes no provision for costs and expenses incurred by the supervisor in a case where the appeal is successful.    We think the act of 1873 authorized the costs and expenses incurred by the board of supervisors on the appeal to the State assessors to be charged upon the city of Kingston. The costs and expenses in this case audited by the board and charged upon the city embraced compensation to counsel, appraisers, and employes, and disbursements amounting in the aggregate to more than $17,000.    It is asserted that many of the items audited were not such as would be taxed in favor of

the prevailing party in an ordinary action. It is not claimed that any of the expenses audited were not incurred, or that they were incurred in bad faith. It certainly must be conceded that the preparation on the part of the board of supervisors to meet the issue presented by the appeal was very thorough. It, however, may well be doubted whether it was discreet or just to impose upon the city of Kingston and the town of Marbletown the entire expense of searching for and making abstracts of all the conveyances recorded in Ulster county for a period of five years, and of appraising every separate piece of real estate in the county. It may be assumed that few appeals will be taken to the State assessors from equalizations at the hazard of paying such enormous expenses. The mass of evidence collected by the supervisors will doubtless be very useful in future equalizations, but the equity of charging the whole cost of the information upon the appellant in this case is not very apparent. But we have to deal only with the question in its strictly legal aspects. The act (Chap. 49 of the Laws of 1876), amending the act of 1859 contemplates that evidence of valuation of real and personal property in the county shall be given, and it appears, without contradiction, that such evidence has usually been produced, and received by the State assessors. The statute of 1873 is very broad. All costs and expenses of the appeal " arising from or connected therewith " are chargeable. It constitutes the board of supervisors the auditing tribunal. What particular items shall constitute the costs and expenses mentioned are not defined. It cannot be said that the employment of necessary appraisers and searchers at a reasonable *per diem* compensation, and making the necessary disbursements in preparing for the investigation, were not legal items of expense chargeable under the statute. The determination as to their allowance the statute relegates to the board of supervisors, and the decision of the auditing board as to the amount, necessity, and reasonableness of the expense incurred, in the absence of fraud or collusion, is final and conclusive. (*Osterhoudt* v. *Rigney*, 98 N. Y. 222.)

It is further objected that the legislature could not constitute

the board of supervisors a board to audit the expenses charge-able against the city — the other party to the appeal — on the ground that thereby it was made a judge in its own cause. The authorities are decisive against the objection. The board of supervisors collectively had no interest to be affected by the audit, and its members as individuals had no interest other than was common to every tax payer in the county. In mak-ing the audit they were discharging a duty of public adminis-tration cast upon them by law, and were neither within the letter nor spirit of the statute prohibiting a judge from sitting in a case in which he is a party or is interested. (*People* v. *Wheeler*, 21 N. Y. 82; FOLGER, J., *Matter of Ryers*, 72 id. 15; *Foot* v. *Stiles*, 57 id. 399.) It is also objected that the board of supervisors denied a hearing to the supervisors of Kingston and their counsel prior to the audit. The supervi-sors of the city were members of the board. The board, in its aggregate capacity in exercising the powers conferred by statute, represented not only the whole county, but each town and ward therein affected by its proceedings. The return to the *certiorari*, shows that the demand for a hearing was not made until shortly before the time fixed for the adjournment of the board, and that in fact the supervisors of Kingston had knowledge of the bills presented for audit for some time before the demand was made, and so far as appears might have interposed any objections thereto. We think, under the circumstances disclosed, no legal right of the defend-ant was invaded by the denial of the application for delay. The inclusion in the original audit of allowances to persons who were supervisors, for special services rendered, amount-ing in the aggregate to $1,227, is not now in question. This sum is excluded from the amount sought to be charged against Kingston, and its inclusion in the original audit, if erroneous, in the final result inflicted no injury upon the appellant. The point is also taken that the proceeding by *mandamus*, now under review, was never directed or authorized by the board of supervisors of Ulster county, and that for this reason the order maintaining the writ should be reversed. We enter-

tain no doubt that the board of supervisors had such an interest in enforcing the collection of the costs audited by the board, and charged against the city of Kingston, that it could authorize any proper proceeding to be taken in its behalf, to that end. It was the party respondent in the appeal. It was its duty, as the representative of the county, to defend its equalization, if it believed it to be just, and as incident to the duty it could incur the necessary expenses in defending its action. The county incurred them, and was in the first instance liable for their payment. The expenses, when incurred, were we think county charges. The statute enumerates as among county charges (1 R. S. 385, § 3, subd. 15), "the contingent expenses necessarily incurred for the use and benefit of a county." It has been frequently held that services rendered to a county in pursuance of a legal employment, for which no specific compensation is provided, are contingent charges against the county. (*Bright* v. *Supervisors, etc.*, 18 Johns. 242 ; *People* v. *Supervisors, etc.*, 12 Wend. 257 ; *People* v. *Supervisors of Delaware*, 45 N. Y. 196.) It is true that the act of 1873 declares that if the appeal is not sustained, the costs and expenses "shall be a charge on the town, city," etc. But it cannot be known until the decision of the State assessors, whether any costs or expenses will be chargeable against the party appealing. The board of supervisors must of necessity incur the expenses in the first instance on its own credit, and having done so, it has a remedy over against the town, city, or ward, in case it succeeds on the appeal. The board of supervisors, therefore, had an interest to enforce the collection of the charge against the city of Kingston. The precise point is that it did not authorize its attorney to pursue the remedy by *mandamus*, or take other legal proceeding to enforce its right. We think the resolution of December 4, 1883, for the employment of counsel, "in all matters in litigation," growing out of the equalization appeal, and authorizing him "to take all necessary and proper proceedings in the name of the board, in the actions and proceedings referred to," supplemented by the appointment of a committee December

12, 1883, with full power to do all things in the litigation, and incur such expenses therein as they might deem necessary in behalf of the board, conferred ample authority upon the counsel and committee to prosecute this proceeding. The criticism upon the resolution of December 4, 1883, is, that it only refers to matters "in litigation," and not to future litigation. This is quite too technical in view of the fact that no litigation was then pending, and the resolution would be without meaning unless it referred to the general controversy, and to litigations which might grow out of it.

The final objection is that the charge against the city of Kingston for the costs and expenses of the equalization appeal cannot be enforced through the ordinary statutory machinery for the collection of taxes in the city. The charter of Kingston provides a special system for the collection of taxes therein. The board of supervisors do not issue any warrant for the collection of the State or county tax chargeable upon the city. Section 72 of the charter requires the board to fix the proportionable amount of State and county charges to be paid by the city, a certificate of which is to be delivered by the clerk of the board to the clerk of the city, and it is then made the duty of the common council to raise the amount by tax, upon the warrant of the city clerk. (§ 73.) The board of supervisors in December, 1884, included in the schedule of taxes to be raised by the city its share of the expense of the equalization litigation. This we think was proper. The expenses were, as has been stated, in the first instance a county charge, but ultimately, as the event determined, to be paid by the city. The common council provided for the collection of the other items in the schedule, but omitted to take any action to levy the item in question. The *mandamus* proceeding was then instituted. It is now said that there was no refusal to collect this item. The omission to perform a plain duty is equivalent to a refusal, and one of the affidavits presented by the defendant in the *mandamus* proceeding sets forth the reasons " why the defendant will not raise the money," etc. We think the direction in the act of 1873, that the costs and expenses shall be audited by

the board of supervisors and " levied upon the taxable property in said town, city, or ward," is to be .carried out by causing the same to be levied in the usual way provided for levying and collecting taxes in the city.

The order should be affirmed.

All concur.

Order affirmed.