THE STATE EX REL. DURAFLOR PRODUCTS COMPANY v. CLAUDE O. PEARCY, Judge of Circuit Court.—29 S. W. (2d) 83.

Division One, June 3, 1930.

*Frank Coffman* for relator.

338

*Heideman & Heideman* for respondent.

ELLISON, J.—Certiorari to the Hon. Claude O. Pearcy, Judge of the Circuit Court of the City of St. Louis, Division 1, bringing up the record in a cause entitled Emil Strippgen v. Duraflor Products Company, a corporation, the defendant therein being the relator here.

The plaintiff Strippgen sued the relator in a justice court in the city of St. Louis on a merchandise account for $190. The relator filed answer denying the indebtedness, and alleging the merchandise was accepted and received by it to apply on an indebtedness of $4,000 which Strippgen owed it on his subscription for 40 shares of its capital stock of the par value of $100 per share. The answer concluded by alleging the plaintiff "is indebted to the corporation, defendant herein, for the unpaid balance of the subscription price, or par value of said stock, and that, therefore, he is greatly indebted to the corporation, defendant herein. Wherefore, having fully answered, this defendant prays to be hence dismissed, with its proper costs."

The justice rendered judgment as follows:

"The evidence having been duly heard the Justice doth render a judgment for Emil Strippgen, plaintiff, and against Duraflor Products Company, a corporation, defendant, for $190 on plaintiff's cause of action, and in favor of Duraflor Products Company, a corporation, defendant, and against Emil Strippgen, plaintiff, for $190 and costs on defendant's counterclaim. Plaintiff to pay costs."

The plaintiff filed his affidavit and bond in appeal "from the judgment rendered against him on defendant's counterclaim," as the justice's record recites. The affidavit in appeal states the appellant believes he has been injured by "the judgment of the justice rendered against the plaintiff."

In the circuit court the plaintiff Strippgen filed a motion "to vacate, declare null and void, and for naught hold, the judgment rendered in said cause against the plaintiff herein and in favor of the defendant herein" by the justice, for the reasons, among others, that the defendant's answer did not contain a prayer for affirmative relief, and was not a counterclaim, but amounted simply to a plea of confession and avoidance, in consequence of which the justice had no jurisdiction to render said judgment in favor of the defendant and against the plaintiff. Without any trial on the merits or hearing *de novo* the respondent circuit judge sustained this motion.

The relator thereupon moved the circuit court to set aside its order sustaining the plaintiff's motion, aforesaid, assigning fifteen

340

grounds or reasons therefor, the central thought of all of which was that in the consideration of appeals from a justice of the peace court a circuit court does not sit as a court of review and cannot modify, amend or strike out the judgment of the justice; but under Section 2902, Revised Statutes 1919, must hear the cause anew, the judgment of the justice court being automatically vacated by the appeal. On motion of the plaintiff the respondent circuit judge struck the relator's motion from the files. The rulings on the three motions above mentioned were all made during the February term, 1929, of said circuit court.

This ended the case so far as the record brought up from the circuit court shows. There never was a hearing on the merits or a direct request from the relator to the circuit court that it proceed to try the cause anew. In the petition for our writ it is alleged that after the circuit court's adverse rulings on the three motions aforesaid the relator made application to the St. Louis Court of Appeals for a writ of certiorari, but that court denied the application. The petition expressly assigns the foregoing as a reason for seeking the writ from this court instead of the St. Louis Court of Appeals.

I. The answer filed by the relator in the justice court was undoubtedly good as a plea of payment or express denial of the indebtedness. But it was not a proper plea of set-off. There was no prayer for judgment on the relator's cross-demand (though it has been said that is not fatal; Wagner v. Dette, 2 Mo. App. 254, 260), and the amount thereof exceeded the justice's monetary jurisdiction. [Secs. 2768, 2953, R. S. 1919; Guhman v. Heckel (Mo. App.), 249 S. W. 111, 112.]

The judgment of the justice for $190 in favor of the plaintiff on his account, and for a like amount and costs in favor of the relator on its "counterclaim," was therefore erroneous. Indeed, it would have been so even if the answer had correctly pleaded a counterclaim, for the proper course in such circumstances would have been to enter a single judgment for the party prevailing on the whole case. [Secs. 1298, 2771, R. S. 1919.]

But it does not follow that the circuit court had the right to vacate the judgment for errors committed by the justice. Section 2902, Revised Statutes 1919, says the circuit court on appeal "shall proceed to hear, try and determine the same (cause) anew, without regarding any error, defect or other imperfection in the original summons or the service thereof, or on the trial, judgment or other proceedings of the justice or constable in relation to the cause."

The respondent maintains the statute does not apply in this case, his position being that the section refers only to judgments which

are erroneous in the sense of being defective or imperfect and not to those which are wholly void; and he contends the judgment involved here was of the latter character. The line of argument is that the justice's judgment was really two judgments, one for the plaintiff on his merchandise account and the other for the relator on a counterclaim. The appeal was taken, says the respondent, from the *latter judgment alone* and since the relator's answer did not state a cause of action on a counterclaim the judgment purporting to award the relator relief on that basis was an absolute nullity and the circuit court had the right to treat it as non-existent and to vacate it.

Cases are cited holding a judgment on issues outside the pleadings is *coram non judice* and void insofar as it ranges beyond the pleadings, such as Hecker v. Bleish, 319 Mo. 149, 175, 3 S. W. (2d) 1008, 1019, and Owens v. McCleary (Mo. App.), 273 S. W. 145, 147; and reference is made to other decisions ruling that where the judgment rendered by a justice is not within his jurisdiction the circuit court on appeal should dismiss the action. [Dillard v. St. L., K. C. & N. Rd. Co., 58 Mo. 69, 74; Iba v. H. & St. J. Rd. Co., 45 Mo. 469, 475.] In the Dillard case the amount sued for and recovered exceeded the jurisdiction of the justice; in the Iba case the record failed to show he had territorial jurisdiction. Other cases will come to mind, as where a justice of the peace attempts to try an equity suit or one involving title to real estate.

But the respondent's contention cannot stand for several reasons. The decisions he cites are based on the proposition that the jurisdiction of the circuit court on appeal from justice court is derivative, and if the latter court has no jurisdiction the former acquires none. This is true, but if the circuit court had no jurisdiction it should have dismissed the action as was done in the Dillard and Iba cases, last cited. In sustaining the motion to vacate the court assumed and exercised a jurisdiction it did not possess—on that theory of the case—except as an incident to entering a dismissal. [K. C. Sanitary Co. v. Laclede County, 307 Mo. 10, 15, 269 S. W. 395, 397.]

Futhermore, it is not the law that the circuit court lacks jurisdiction whenever the judgment of the justice is void. If the justice court has jurisdiction of the *cause*—that is, of the subject-matter and the parties—the circuit court takes jurisdiction on due and timely appeal no matter how erroneous the judgment of the justice may be. [State ex rel. v. Mosman, 112 Mo. App. 540, 546-7, 87 S. W. 75, 76; State ex rel. v. Shain, 297 Mo. 369, 381, 248 S. W. 591, 593; Nettleton Bank v. Estate of McGauhey, 318 Mo. 948, 954, 2 S. W. (2d) 773, 775.]

There was nothing in the subject-matter of the action involved in this case to deprive either the justice court or circuit court of

jurisdiction. The plaintiff sued on an account. The relator filed answer denying the indebtedness or pleading payment, or both. Thus was presented a controversy triable in the justice court. The fact that the justice went wrong by rendering a double-headed judgment in part for relator on a *counterclaim* did not destroy his jurisdiction over the cause. It was simply an erroneous use, or abuse, of jurisdiction. [Levine v. Marchisic (Mo. Div. 2), 270 S. W. 643, 645.]

Again, conceding out of precaution that the relator's answer attempted, though vainly, to interpose a plea of set-off or counterclaim—still we think the respondent errs in contending the plaintiff's appeal took up only that branch of the case and created a situation in which the circuit court was without jurisdiction altogether because the justice court had none over that *part* of the action.

Under the statute (Sec. 2771, R. S. 1919) the justice can render but a single judgment for the net amount due the prevailing party, covering both the plaintiff's demand and the defendant's counterclaim. From that judgment the aggrieved party appeals (Sec. 2890, R. S. 1919), and the circuit court tries the action *de novo* (Sec. 2902, R. S. 1919). That the appeal brings up the whole case seems clear from the following authorities: Pullis v. Pullis, 157 Mo. 565, 588, 57 S. W. 1095, 1101; Leonard v. Security Building Co., 179 Mo. App. 480, 484, 162 S. W. 685, 686; Seevers v. Cleveland Coal Co., 166 Iowa, 284, 293, 147 N. W. 761, 764-6.

The two Missouri cases just cited say it was the law prior to the enactment in 1889 of what is at present Section 1304, Revised Statutes 1919, that if an appealing plaintiff dismissed his suit in the circuit court the dismissal carried with it any counterclaim and judgment thereon which the defendant had obtained in the justice court, on the theory that the whole was one case. Section 1304 now provides a counterclaim is to be deemed an independent action and that a dismissal or other discontinuance of the main suit by the plaintiff shall not foreclose further proceedings on the defendant's counterclaim. But consideration of the section in connection with the other statutes mentioned leaves us of the opinion that it has no reference to the scope of appellate jurisdiction and that it does not authorize separate and several appeals on the main suit and counterclaim. One case seems to be in conflict with this conclusion, Loveland v. Jungbluth (St. L. Ct. App.), 226 S. W. 46, 48, but we are unable to agree with it.

Suppose in this case the justice had found for plaintiff for $190 on his account and for the relator for $4,000 on its so-called counterclaim, and had rendered judgment for relator for the difference of $3810—clearly outside of his jurisdiction, of course. Could the plaintiff appeal alone from the justice's *finding* against him on the

counterclaim? And would it not be the circuit court's duty to try the cause *de novo* on the plaintiff's demand and to take the defendant's counterclaim from the jury? [Guhman v. Heckel, supra, 249 S. W. 111.] If this is so, we cannot see how or why the plaintiff would be in any better position because the justice had, perchance, erroneously attempted to enter a separate judgment for the amount claimed by each party.

To sum up the whole matter, we think the circuit court had jurisdiction of the cause in any view of the case, and that it was without authority to entertain a motion to vacate all or any part of the judgment below, but could only hear the case *de novo*, making such rulings on the pleadings and evidence as would lead to a correct judgment on its own part touching all the issues of fact and law presented.

II. Respondent suggests next that our writ should not have been issued and should now be quashed in view of the provisions of Rule 32 of this court. That rule says no original remedial writ (except habeas corpus) will be issued when adequate relief can be obtained by appeal or writ of error, or by application to a court of concurrent jurisdiction. It is urged, citing Brennan v. Walbridge, 116 Mo. 656, 22 S. W. 893, that in view of the crowded condition of this court's docket, the fact that the case is not one of extraordinary magnitude or importance, and the fact that the St. Louis Court of Appeals had concurrent jurisdiction, that matter should have been left to the determination of that court. That may be so. We do not say the rule should not be strictly enforced. But our writ has been issued, the record is here, and so far as our rule is concerned, it is better or at least more in accord with the custom of the court heretofore, to follow the case to the end in these circumstances. [State ex rel. Nolen v. Nelson, 310 Mo. 526, 532, 275 S. W. 927, 928.] Especially does this seem justified when the facts appear to call for judicial intervention.

III. It is next contended the refusal of the St. Louis Court of Appeals to issue the writ foreclosed the right of the relator to obtain relief by a like writ from this court—on the theory that the matter is *res judicata*. The case cited is In re Breck, 252 Mo. 302, 322-8, 158 S. W. 843, 849-51, wherein it was held this court was concluded in an original habeas corpus and certiorari proceeding by a former adjudication of the St. Louis City Circuit Court and the St. Louis Court of Appeals involving the same parties and issues. The record of a probate court had been brought before the circuit court by certiorari and that court on a consideration of the questions presented on their merits had refused to quash it. On appeal this

344

judgment had been affirmed by the St. Louis Court of Appeals in State ex rel. v. Holtcamp, 168 Mo. App. 402, 153 S. W. 75.

We cannot uphold respondent's contention for several reasons. In the first place, the fact that certiorari was sought by the relator and refused by the St. Louis Court of Appeals appears only from the allegations in the petition filed in this court praying the issuance of our writ; and at this stage of the case we cannot look to the relator's petition for facts not appearing in the respondent's return. [State ex rel. Chase v. Calvird (Mo. Div. 1), 24 S. W. (2d) 111, 115.]

Again, even if the petition could be considered it only shows the bare fact that the relator applied to the St. Louis Court of Appeals for certiorari and that the application was denied. There is no disclosure as to the allegations of the petition lodged in the Court of Appeals, or whether that court even knew of the merits of the controversy or considered them. In these circumstances this court is in no position to say the Court of Appeals' refusal to *issue* a writ was an adjudication on questions presented by a *record* which never got before it. [Ford v. Erskine, 109 Me. 164, 167, 83 Atl. 455.]

It is true the respondent filed unverified ''Suggestions'' here in opposition to the petition, in which suggestions some of the above mentioned facts are made to appear by allegation; but it *is too* plain for discussion that the ruling and record of the appellate court cannot be brought to the attention of this court in that way. So far as bears on this question of procedure and pleading, it is perhaps true that if respondent had filed a motion to quash our writ, accompanied by a certified transcript of the record of the Court of Appeals, the point would be before us for whatever it is worth. [State ex rel. Hancock v. Falkenhainer, 316 Mo. 651, 291 S. W. 466; State ex rel. McFarland v. Terte, 320 Mo. 465, 8 S. W. (2d) 16.]

But above and beyond the objections just mentioned is the fact that a writ of certiorari is not a writ of right (as regards private suitors) and that the issuance thereof rests in a sound judicial discretion. [State ex rel. v. Dobson, 135 Mo. 1, 19, 36 S. W. 238, 243; State ex rel. v. Terte, supra (320 Mo. l. c. 472, 8 S. W. (2d), l. c. 19); State ex rel. v. Pfeffle, 220 Mo. App. 676, 682, 293 S. W. 512, 515.] A refusal of the writ in the exercise of that discretion cannot be taken as an adjudication on the right of the party ·to have it or on the merits of the controversy, such as makes these questions *res judicata*. [11 C. J. sec. 385, p. 213; People ex rel. v. City· of Kingston, 101 N. Y. 82, 91, 4 N. E. 348.]

Particularly is that true of this court, which is entrusted with a general superintending control over all inferior courts including

the courts of appeals, by Section 3, Article VI, of the State Constitution and Section 8 of the Amendment of 1884. It will not do to say an inferior court by declining to issue its writ can prevent this court from doing so. When, as in the Breck case cited by respondent and referred to in the first paragraph of this discussion, a lower court grants its writ and rightfully takes jurisdiction of a record controversy and finally decides it, its determination is binding on this court as an adjudication. [34 C. J. sec. 1173, p. 760.] But that is not the situation in this case.

IV. It is also suggested that this court lacked jurisdiction to issue a writ of certiorari herein and has no jurisdiction over the proceeding now, because the amount in dispute in the case of Strippgen v. Duraflor Products Company did not exceed $7500, which fact would have made an *appeal* therein go to the St. Louis Court of Appeals instead of this court. [See Sec. 2418, R. S. 1919.] In other words the point made is that under Sections 3 and 12, Article VI, of the Constitution, the Courts of Appeals have *exclusive* supervisory control over the inferior courts of the State in all cases over which said appellate courts have appellate jurisdiction, or by analogy would have it on the facts if the cause happens to be one which actually is not appealable; and that the superintending control of this court over inferior courts extends only to cases wherein it similarly has or would have appellate jurisdiction. (Of course, under another section of the Constitution—Sec. 8, Amendment of 1884—this court has superintending control over the Courts of Appeals in certain instances though it no longer has appellate jurisdiction from them, but this branch of our jurisdiction is not here involved.)

It is true Section 12, Article VI, of the Constitution gives the several courts of appeals superintending control over all inferior courts of record in their respective territorial jurisdictions; and it has, furthermore, been repeatedly ruled that such supervision only reaches causes over which said appellate courts have or would have jurisdiction on appeal or by writ of error. [State ex rel. Blakemore v. Rombauer, 101 Mo. 499, 14 S. W. 726; State ex rel. Rogers v. Rombauer, 105 Mo. 103, 16 S. W. 695; State ex rel. Sale v. Nortoni, 201 Mo. 1, 25, 98 S. W. 554, 560; State ex rel. Wurdeman v. Reynolds, 275 Mo. 113, 121, 204 S. W. 1093, 1095; State ex rel. Hazel v. Watkins, 295 Mo. 648, 651, 245 S. W. 1059, 1060.] But we have never seen a case enlarging on that proposition and holding that as to such cases the courts of appeals have exclusive superintending control, and that the supervision of the Supreme Court is limited to causes over which it has or would have appellate jurisdiction.

On the contrary Section 3, Article VI, of the Constitution gives the Supreme Court a "*general* superintending control" over the lower courts of the State (italics ours), and Section 5 of the amendment of 1884 says in all cases reviewable by the Supreme Court on appeal or writ of error that court shall "*exclusively* exercise superintending control over" the trial courts (italics ours). These constitutional provisions must be taken to mean the Supreme Court has a superintending control over all inferior courts in all cases, which control is exclusive as applied to causes within the range of its appellate jurisdiction, and concurrent with that of the Courts of Appeals in cases over which the latter courts have appellate jurisdiction.

Such is the construction put on the Constitution heretofore as is evidenced by the following from State ex rel. v. Nortoni, supra, (201 Mo. l. c. 28, 98 S. W. l. c. 561):

"Respondents, however, contend that as by Section 12 of Article 6 of the Constitution, the St. Louis Court of Appeals is expressly authorized to issue original remedial writs and to hear and determine the same, and has superintending control over inferior courts of record; that with respect to such matters the authority of said court seems to be coequal with that vested in the Supreme Court by Section 2 (3?) of the same article. *This is doubtless true where both courts have coordinate jurisdiction, but not otherwise, as in the case at bar.*" (Italics and parenthesis ours.)

So, too, since 1916, Rule 32 of this court has been that "no original remedial writ . . . will be issued by this court in any case wherein adequate relief can be afforded . . . by application for such writ to a court having in that behalf concurrent jurisdiction." In short, the matter is controlled by court rule and not by the Constitution; and we have already discussed the application of the rule to this case under Point II of this opinion.

V. The next point made by respondent is that certiorari is not the proper remedy to reach the error complained of by relator, if error it was. This contention runs on the theory that certiorari will not be granted when relief is available by appeal or writ of error. It is insisted the order of the circuit court sustaining the plaintiff's motion to vacate the judgment of the justice was a final judgment, and that the overruling of relator's motion to set aside the aforesaid vacating order was a special order after final judgment. If this is so the cause was appealable to the St. Louis Court of Appeals under Section 1469, Revised Statutes 1919.

But neither of the cases cited is in point. In Suess v. Motz, 220 Mo. App. 32, 35, 285 S. W. 775, 776, the St. Louis Court of Appeals

said: "It is no longer open to question but that the action or order of a trial court on a motion to vacate a judgment . . . is a final judgment from which an appeal or writ of error will lie." But the court was speaking of orders on motions to vacate *final* judgments. The facts were that a plaintiff was allowed to dismiss her suit after the cause had been submitted to the jury. The defendant unsuccessfully moved to vacate the order of dismissal and then appealed.

In Scott v. Rees, 300 Mo. 123, 134, 253 S. W. 998, 1001, quoting from State ex rel. v. Riley, 219 Mo. 667, 695, 118 S. W. 647, 656, this court said that "the judgment of dismissal . . . was a final judgment, and the order overruling the motion to vacate such judgment was at least a 'special order after final judgment in the cause.' "

In the instant case, however, the judgment attempted to be vacated was the judgment of the justice which had already been vacated by the appeal to the circuit court. In point of law it had no existence for any purpose we are called on to consider, and after the order was made the case stood exactly as it did before— pending for a trial *de novo*. In this situation there was nothing to appeal from.

VI. But this brings us face to face with another question. As stated in the last paragraph, so far as the record shows the cause is still pending on its merits in the Circuit Court of the City of St. Louis. There has been no final judgment, and the rule almost universally in this country is that "the writ will be refused where the proceedings in the lower tribunal are still pending and undetermined." [11 C. J. sec. 75, p. 126.] The authorities run that way in this State. [State ex rel. v. Pfeffle, supra, 220 Mo. App. l. c. 684, 293 S. W. l. c. 516; State ex rel. v. Goodrich, 257 Mo. 40, 49, 165 S. W. 707, 709.]

The order of the circuit court sustaining the plaintiff's motion to vacate the judgment of the justice was not dispositive of the cause and a quashal of that order is not necessary to support the circuit court's derivative jurisdiction. Neither would a dismissal of the appeal by the plaintiff "revivify" the judgment of the justice (Leonard v. Security Bldg. Co., 179 Mo. App. 480, 486, 162 S. W. 685, 687) as to the part in the plaintiff's favor, leaving the part in the relator's favor stricken out by the circuit court order. That order was void, but it was not a final judgment and it cannot be reached either by appeal or certiorari. What the relator really seeks to do is to compel the circuit court to try the case as it stands, but certiorari cannot be made to take the place of mandamus. [State ex rel. v. Broaddus, 245 Mo. 123, 136, 149 S. W. 473, 476, Ann. Cas. 1914A, 823.]

·For the reasons given the writ of certiorari is quashed. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.