In the Matter of the Application of AUGUST BECK, Appellant, for a Peremptory Writ of Mandamus against THE BOARD OF SUPERVISORS OF THE COUNTY OF ERIE, Respondent.

*Sheriff of Erie county — salaries paid to his under sheriff and deputy sheriffs cannot be charged to the county as "necessary and actual disbursements."*

The sheriff of Erie county, entitled to receive as compensation for his services an annual salary, to be determined by the board of supervisors under the provisions of chapter 108 of the Laws of 1891, "for all the official services performed by him as sheriff," is not entitled to receive from the county as "necessary and actual disbursements" incurred by him in the discharge of his duties, the salaries paid by him to his under sheriff and deputy sheriffs employed in connection with his execution of the duties of his office.

APPEAL by the plaintiff, August Beck, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 29th day of May, 1894, denying his application for a peremptory writ of mandamus, " on the ground that he is not entitled thereto as a matter of law upon the facts appearing," and by which the application for a peremptory writ was dismissed upon the merits, with costs.

In November, 1891, the relator was elected sheriff of Erie county, and entered upon the discharge of his duties as such sheriff on the 1st day of January, 1892. He states in his affidavit that it became and was his duty to employ necessary under sheriffs, deputy sheriffs, clerks and assistants to assist in the discharge of his duties as sheriff of the county of Erie. He also states in his affidavit that the supervisors have never fully provided what persons should be employed by him or what salaries or compensation they should receive under chapter 108 of the Laws of 1891; that he did appoint an under sheriff and various deputy sheriffs to assist in the discharge of the duties of his office, " said under sheriff to receive a salary of $2,500 and said deputy sheriffs each to receive salaries of $1,450, said salaries being reasonable and necessary, and the salaries which have been paid to persons filling the like positions in the sheriff's office for many years." His affidavit also states that he has " been compelled to pay to said Oliver G. Steele and said Patrick Burns and said Gotlieb Basler

the amount of their salaries from January 1, 1892, to January 1, 1893; that the amount which deponent so paid was $2,500 to Oliver G. Steele, $1,450 to Patrick Burns, and $1,450 to Gotlieb Basler, and said amounts were necessary and actual disbursements incurred by deponent in the discharge of the duties designated by section 2 of chapter 108 of the Laws of 1891, in performing services for the county of Erie; that deponent duly presented claims therefor to the board of supervisors of the county of Erie, and demanded that they be audited and allowed by the board of supervisors as other claims against the county are audited and allowed; that the board of supervisors of Erie county considered said claims, and thereafter and on or about the     day of          , 1892, refused to audit and allow said claims, as other claims against the county are audited and allowed, solely on the ground that, by the true construction of chapter 108 of the Laws of 1891, they were not proper claims against the county of Erie, as matter of law, notwithstanding the facts aforesaid.   *   *   *"

An affidavit of Fayette Kelly, chairman of the board of supervisors, was read in opposition, which contained several denials and the following language: "Deponent denies that the amounts paid to Oliver G. Steele, Patrick Burns and Gotlieb Basler by said August Beck were necessary and actual disbursements incurred by him in the discharge of the duties designated by section 2 of chapter 108 of the Laws of 1891, or in performing services for the county of Erie. That such amounts were paid in whole or in part for services rendered the sheriff, for which he received fees to his own use under section nine of said act."

*John Cunneen*, for the appellant.

*Spencer Clinton*, for the respondent.

PER CURIAM:

In chapter 108 of the Laws of 1891 it is provided that the sheriff of Erie county shall receive as compensation for his services an annual salary to be fixed by the board of supervisors of said county prior to the election of every such sheriff, and it was provided that the salary so fixed "shall not be less than four thousand dollars nor exceed five thousand dollars per annum."

In section 2 of that act there is the following provision : " § 2. The salary so fixed by said board of supervisors shall constitute the whole compensation which shall be allowed or paid to or received by said sheriff for all the official services performed by him or required to be performed by him as sheriff in his attendance upon any and all courts of record held in the county of Erie, and for all services performed by him for the United States, the State of New York, or for the county of Erie, or chargeable thereto, or which he is or shall be required or authorized by law to perform by virtue of his office as such sheriff, and no compensation, payment or allowance shall be made to him for his own use for any of such services except the salary aforesaid."

We think that the claim made by the relator is in clear opposition to the provisions of the statute and that the board of supervisors properly denied the same, and that the Special Term was warranted in refusing to grant a writ of mandamus upon the papers used at the Special Term. There is a very exhaustive opinion prepared by the learned judge who held the Special Term, and the views expressed by him meet with our approval.* We think the order made denying the application for a writ of peremptory mandamus should be affirmed, with costs against the relator.

GREEN, J., not sitting.

Order affirmed, with costs.

---

* The following is the opinion of the judge at Special Term:

GREEN, J.:

The counsel for the relator states the question to be whether, under chapter 108, Laws of 1891, the "salaries" paid to the under sheriff and deputy sheriffs connected with the office of sheriff are "necessary and actual disbursements" incurred by the sheriff in the discharge of his duties as such.

That the salaries so paid or allowed may, in a general sense, have been actual and necessary disbursements may be conceded; but it by no means follows that such salaries are "disbursements" in the contemplation of the law, for which a legal right or claim is conferred upon the sheriff or a legal duty or obligation is imposed upon the county; a payment for services inuring to the benefit of the county or the public may be a necessary disbursement, but it does not *necessarily* follow that it constitutes a legal claim or obligation upon a county treasury. It is not a logical conclusion that because the statute makes compensation to the sheriff for "his services" and makes no provision whatever for the compensation of the deputies whom he is authorized or required to appoint, that, therefore, he has implied authority to allow them a fair and reasonable compensation for their

JOHN JEROME BURNS, Appellant, *v.* THE TOWN OF FARMINGTON, Respondent.

*Negligence — a horse frightened by an irregular pile of timber within the bounds of a highway — notice thereof to the commissioner of highways — questions for the jury.*

In an action brought against a town to recover damages for personal injuries caused to the plaintiff who, while riding in a buggy drawn by one horse, was injured in consequence of the horse taking fright while passing an irregular pile of hub timber lying within about three feet of the beaten track of the town highway, it appeared that some ten or twelve cords of the timber had been piled within the bounds of the highway about February 28, 1897, and that, although a large part of it had been drawn away between the eighth and twentieth of March, there was left on the evening of April sixth, when the accident occurred, the pile in question.

---

services, and to claim it is a necessary " disbursement" for the benefit of the county.

The statutes provide that the sheriff *shall* appoint an under sheriff, and *may* appoint such and so many deputies as he may think proper (1 R. S. 379, §§ 71, 73), but not to exceed one for every 3,000 inhabitants. (Laws of 1892, chap. 686, § 182.) The under sheriff and general deputies are officers, and are within the provisions of the statute relating to the appointment and resignation of officers, and they must possess the same qualifications as the sheriff himself. The jailer is but a servant of the sheriff and is not an officer, and it is not necessary, therefore, that he should possess the qualifications required of the sheriff or his deputies, or that he should be appointed by writing or that he should take the oath of office. It is usual, however, to appoint a jailer a deputy also; and in such cases his appointment and bond to the sheriff may include the place of jailer as well as the office of deputy. (Crock. Sher. § 14.)

The under sheriff, general deputies and jailers hold their respective appointments during the pleasure of the sheriff, and they may be removed at any time and others appointed in their stead. The death, removal from office or resignation of the sheriff vacates the office of all the general and special deputies, jailers and turnkeys, but it is otherwise with the under sheriff. (Id. § 15.)

The powers and duties of an under sheriff are, in some respects, more extensive than those of the deputy; thus he may, like the sheriff, depute persons to do particular acts; in the absence of the sheriff he must attend upon the drawings of juries for the courts of his county; he must attend, in the absence of the sheriff, upon the execution of a criminal; whenever a vacancy shall occur in the office of sheriff, the under sheriff shall, in all things, execute the office of sheriff of the county until a sheriff shall be elected or appointed. In all other respects the under sheriff is upon an equality with the general deputies. (Id. § 16.)

A number of witnesses testified that horses described as gentle were frightened by this timber, while other witnesses testified that they had driven past it and that their horses were not frightened.

The commissioner of highways knew of the existence of the obstruction between the tenth and twentieth of March, at which time he had funds in his hands for highway purposes, but he took no steps to have the timber removed.

*Held*, that the evidence presented two questions of fact which should have been submitted to the jury:

*First*, whether a man of ordinary intelligence and experience with horses and highways should have foreseen that this irregular pile of timber, lying by the roadside, was likely to frighten horses; and,

*Second*, whether the commissioner of highways was negligent in permitting this timber to remain by the roadside from March 1 to April 6, 1897;

That if both of these questions were found in the plaintiff's favor, and he was free from contributory negligence. he would be entitled to a verdict;

That the location, size and appearance of the pile of timber having been described by the witnesses, and photographs of the timber having been produced, the question whether it was likely to frighten horses was one for the jury to decide, and not one to be determined by the opinions of witnesses.

---

The appointment of under sheriff and general deputies confers on them, generally speaking, the power to execute all the ministerial duties of the sheriff. (Id. § 17.)

The sheriff may allow his subordinate officers such compensation as shall be agreed upon, either by way of salary or by allowing them a portion of the perquisites to which he is entitled as the principal; and he may contract with his under sheriff and deputies for the discharge of the duties of their several trusts, either for a specific compensation or for a reasonable proportion of the fees and emoluments arising from the performance of such duties. (Id. § 21.)

The under sheriff, while discharging the duties of the office, in case of a vacancy therein, is entitled to the emoluments of the office. (Laws of 1892, chap. 686, § 190; 55 N. Y. 74.)

In the contemplation of the law the fees which the statutes prescribe are adequate compensation for the risk and expense incurred. (*Crofut* v. *Brandt*, 58 N. Y. 112.)

The sheriff accepts office upon the condition of performing its entire duties for such compensation as is specifically allowed by express provisions of law and without any right to claim any other remuneration. This necessarily includes and limits the power of the sheriff to delegate to any other person any right to extra compensation which he could not himself claim. (*O'Connor* v. *O'Connor*, 47 N. Y. Super. Ct. 505.)

The officer takes his office *cum onere*, as well with its honors and profits as with the duty of performing such service as is required of him by law, however onerous, expensive or responsible; he takes the good with the bad, the cases that are remunerative with those that are expensive, and for such compensation as the law specifically affords. (*Crofut* v. *Brandt*, 46 How. Pr. 484.)

APPEAL by the plaintiff, John Jerome Burns, from an order of the Supreme Court, made at the Ontario Trial Term and entered in the office of the clerk of the county of Ontario on the 24th day of February, 1898, denying the plaintiff's motion for a new trial made upon the minutes, the jury having rendered a verdict in favor of the defendant by direction of the court.

---

The general rule is that the rendition of the services of a public officer is deemed to be gratuitous unless a compensation therefor is fixed by a statute or by an ordinance passed pursuant to a power given by statute. The rule is inflexible, that an officer can demand only such fees as the law has fixed and authorized for the performance of his official duties. This doctrine applies where the compensation claimed is a salary payable by the public authorities, or fees payable either by the public authorities or by an individual. (Throop Pub. Off. §§ 446, 447, 449.)

The officer is deemed to have been familiar with the law or ordinance creating the office when he accepted the position and there is no implied contract for compensation. (Beach Pub. Corp. §§ 167, 168.)

If there is an omission in a village charter to make provision for compensation to members of a certain board, and it is apparent that such omission was intentional, the members cannot receive any compensation. (Id. § 169.)

Bearing in mind these general doctrines of the law and statutory provisions, we will consider whether these so-called "disbursements" are "county charges" within the meaning and contemplation of the statutes.

The salaries of various officers and their deputies or assistants were made county charges by special statutes. (2 R. S. [8th ed.] 1067–1077.).

By section 12, chapter 686, Laws of 1892, the board of supervisors is empowered to fix the pay of clerks, assistants and employees in certain offices specified. The Revised Statutes provided that these shall be deemed county charges, viz.: "The monies necessarily expended by any county officer in executing the duties of his office in cases in which no specific compensation for such services is provided by law. The contingent expenses necessarily incurred for the use and benefit of a county." (1 R. S. 386, § 3, subds. 9, 15; and see re-enactment in § 230, chap. 686, Laws of 1892.)

The adjudications establish this general principle, that whenever *services* have been rendered which are beneficial to a county, and no specific compensation is provided by law, they shall be deemed contingent charges against the county. (*Brady* v. *Supervisors*, 2 Sandf. 460; *Doubleday* v. *Supervisors*, 2 Cow. 533; *People ex rel. Supervisors* v. *City of Kingston*, 101 N. Y. 96.)

But it is conceded that the salary or compensation by law allowed to an under sheriff or deputy for general services, could not, under the provisions quoted, have been claimed as a county charge. No such claim, we believe, was ever made, but if made, could not be maintained for a moment. Now, the fact that the office of sheriff is made a salaried office, without any provision being made for the compensation of his subordinates, does not, and cannot, operate to work a

*Frank Rice,* for the appellant.

*Walter H. Knapp,* for the respondent.

Follett, J. :

This action was begun July 20, 1897, to recover damages for personal injuries caused, it is alleged, by the negligence of the

---

change in the provisions quoted, or to alter or extend the construction put upon them by the decisions of the courts, so as to give the sheriff or his subordinates any claim upon the public treasury, or to make their general services county charges under the name of general expenses or disbursements.

An important amendment was made to the statutes by chapter 686, section 230, subdivision 3, of the Laws of 1892. " The compensation of the county officers, their subordinates and assistants, *which are payable by the county,*" are made county charges.

It is true that this amendment was enacted more than a year after the sheriff's subordinates were appointed ; still it has an important bearing upon the question before the court. It is general in its scope and is designed to apply to all such officers and their subordinates whose compensation or salaries are or may be provided for by statute. It does not determine the *right* to compensation, for that must be sought for in other statutes, but simply declares that such compensation, if authorized, is a county charge which the board of supervisors must audit and allow. If the sheriff's subordinate officers or assistants, or the sheriff himself, in their behalf, are entitled to compensation for the general services, they must assert it by virtue of this provision, and not by way of expenses or disbursements.

But in order to maintain such a claim they must point out some statutory provision or authority giving them the right or imposing a legal obligation or duty upon the board of supervisors to audit the claim. This they cannot produce, for none exists, and their claim must fail, unless, as it is strenuously insisted, the act of 1891 giving to the sheriff an allowance for his " necessary and actual disbursements," entitles them, through him, to compensation or salaries for their services, inuring in part to the benefit of the public and in part the special benefit of the sheriff and the parties in civil cases. By section 2 the sheriff's salary shall constitute the whole compensation which shall be allowed, paid to or received by him for all official services performed by him for the United States, the State or the county, and no compensation, payment or allowance shall be made to him for his own use for any of such services except the salary aforesaid. By section 8 the board of supervisors is empowered to fix the salaries of the jailer, turnkey, assistants or employees. By section 9 the sheriff shall be entitled, in addition to his salary, to charge, take and receive the fees allowed him by law in civil causes or proceedings and paid by litigants or individuals *as and for his compensation* for such service and disbursements rendered therein, and *the services of the under sheriff and other employees of his office in such cases and proceedings.* By section 10 he is allowed and entitled to receive *the necessary and actual dis-*

defendant. About February 28, 1897, ten or twelve cords of hub timber were piled by its owner within the bounds of the public highway and near the traveled track thereof. Between the eighth and twentieth of March a large part of this timber was drawn away by the purchaser, but a portion of it was left lying in an irregular-shaped pile within about three feet of the beaten track of the high-

---

*bursements* incurred by him in the discharge of the duties designated in section 2, or in providing any services for which the county receives or is entitled to receive the fees therefor under this act, which said disbursements shall be audited and allowed by the board of supervisors.

By section 11 the services of deputy sheriffs for attendance upon the courts, and for subpœnaing witnesses and serving warrants in criminal proceedings, shall be paid for at and after the same rate now allowed by law for such services; except that where such deputy is a regular employee of the sheriff's department *and under a salary from him or from the county,* he shall only be entitled to charge and receive the actual disbursements incurred by him, to be audited, etc.

We have seen that the jailer and his assistants were, and it seems still are, but servants or employees of the sheriff, and not *officers* of the county, and yet the Legislature has seen fit to provide for *their* salaries, but omitted to make provision for the salaries of those who *are* officers. This we cannot but regard as an *intentional* omission, and as equivalent to a legislative declaration that they should receive no compensation for their general services from the public funds, but should remain in respect to their compensation in *statu quo*. The one who drafted this statute, as well as the members of the Legislature at the time of its enactment, must have known that neither the sheriff nor his subordinates, nor his assistants, ever had any claim against the county for their general services, and yet, possessing such knowledge, they omitted to make any provision for *their* salaries and compensation, but expressly provided for the salaries of mere servants and employees of the sheriff. The lawgivers are also presumed to know that unless provision is made for the salary of a public officer he has no legal claim against the county, and, consequently, the board of supervisors have no power to audit or allow it. But in the case of a mere employee, agent or servant, whose employment is authorized or directed by law or ordinance, it has been decided in a number of cases that he may be entitled to recover a reasonable compensation, as upon an implied contract.

We are also of the opinion that section 9 of the act, taken in connection with all its provisions, and having regard to all other statutory provisions pertaining to the subject, as well as the general principles and rules of law, evince a legislative intention that for whatever services deputies may render in the course of their employment for the benefit of the county, they will be compensated out of the fees received in civil causes, under such arrangement as they may make with the sheriff, but however this may be, this section furnishes no warrant for the proposition that because the statute omits to provide for compensation for their services performed for the public benefit, and for which the county receives

way until after April 6, 1897. This timber consisted of round sticks varying in diameter from four inches to twelve inches, and was four feet and four inches in length.

About ten o'clock in the evening of April 6, 1897, the plaintiff was riding in a buggy, drawn by one horse shown to have been gentle, and while passing this timber the horse was frightened by it,

the fees, therefore, the value of their services is a county charge. The statement made that the civil business is but "incidental" to the public business of the office, we regard as without foundation; but even if the statement were correct, it would not be material or affect the determination of this case either one way or the other.

Nor does section 11 make the deputies' salary a county charge. A regular deputy, having a salary from the sheriff, is not entitled to any compensation for the specific services mentioned; so if he is under salary from the county — but he is not. No authority is given to the sheriff to fix or allow salaries to his subordinates, nor is any authority given to the board of supervisors to fix or allow such salaries. (And note that the under sheriff is not mentioned.)

But the counsel for the relator contends that the under sheriff and the two deputies are entitled to compensation for their services from the county as "necessary and actual disbursements" incurred by the sheriff. To put the proposition in another form, the sheriff is entitled to receive from the county funds, as "disbursements," a sufficient sum of money to compensate his subordinates and assistants for their general services for the benefit of the county. This contention is founded upon section 10 of the statute. This proposition is not maintainable. If sound in principle it would abrogate the well-settled rule of law, that if the compensation of an officer is not fixed or allowed by statute, his services, if of a strictly official nature, must be deemed gratuitous. It would be a novel doctrine, indeed, to declare that, where the statute makes no provision for salary or compensation for deputies authorized or directed to be appointed in public office, they may obtain the same through the principal officer under the name of disbursements. This would be a palpable evasion of the rule of law and ought not to be countenanced or upheld. It may be a serious omission of the Legislature, but the courts cannot supply it, for their functions are not legislative, but of a judicial character only. The principal and his deputies accept their positions with knowledge of the defect in the statute, and they must, therefore, perform their duties gratuitously and trust to the justice of future Legislatures. The fact that the fees or salary of the principal officer are wholly inadequate in amount for the payment of his deputies gives to the latter no legal claim against the public authorities, nor does the payment by the former of a salary to the deputy give him any legal right to claim reimbursement.

It is not claimed, and cannot be, that the sheriff's assistants have any legal claim against the county, or that a writ of mandamus could, upon their application, issue to compel the board of supervisors to audit it. It should be noted, also, that the claim is for general services as deputies or assistants, rendered not

overturned the buggy and severely injured the plaintiff. The evidence shows that this plaintiff was free from contributory negligence. Five witnesses testified that horses described as gentle were frightened by this timber when driven past it. On the other hand, eight or nine witnesses testified that they had driven past it and that their horses were not frightened.

The defendant's commissioner of highways lived within a mile and a half of the obstruction and saw it between the tenth and twentieth of March. At this time he had in his hands about $1,000 of highway money, but took no steps to remove the timber or to compel the person who left it there to remove it.

At the close of the evidence the court directed a verdict for the defendant, to which direction the plaintiff excepted and moved for a new trial on the minutes, which was denied.

The court erred in directing a verdict for the defendant and in denying plaintiff's motion for a new trial. The evidence presented two questions of fact which should have been submitted to the jury : (1) Whether a man of ordinary intelligence and experience with horses and highways should have foreseen that this irregular pile of timber, lying by the roadside, was likely to frighten horses ? and (2) was the defendant's commissioner of highways negligent in permitting this timber to remain upon the roadside from March 1 to

---

only for the benefit of the county and State for which the county receives the fees, but also for the services they were called upon to perform for the benefit of the sheriff and of individuals in civil causes. If such claims were allowed, it might result that the salaries allowed to the deputies, etc., would exceed the fees received by the county. Counsel for the respondent has called the attention of the court to the provisions of section 3280 of the Code of Civil Procedure, which provides that: "Each public officer, upon whom a duty is expressly imposed by law, must execute the same without fee or reward, except where a fee or other compensation therefor is expressly allowed by law. An officer, or other person to whom a fee or other compensation is allowed by law, for any service, shall not charge or receive a greater fee or reward for that service than is so allowed."

Counsel has urged upon the court various equity reasons and considerations in support of his position that the relator ought to be reimbursed for the salaries paid to his subordinate officers. The powers of the court are circumscribed and its jurisdiction limited to the bounds set by the Constitution. The province of the court is to ascertain and declare the law, not to make it. It cannot trespass upon legislative ground. The remedy is legislative and not judicial.

The application for the writ of mandamus is denied, with ten dollars costs and disbursements.