# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1906.

*(Continued from Volume 200)*

THE STATE ex rel. SALE et al. v. NORTONI et al., Judge of St. Louis Court of Appeals.—Three Cases of Same Style and Parties.

In Banc, December 18, 1906.

1. **CERTIORARI: Ministerial Duties: Unconstitutional Law: Jurisdiction.** Ordinarily *certiorari* is not appropriate to review the acts and proceedings of non-judicial bodies or officers, such as the committee of a party, but the circuit court is not without jurisdiction to determine a *certiorari* case which has for its purpose a review of the action of the committee in removing some of its members in direct contravention of a statute whose constitutionality they deny, for if there is no valid law the committee is without authority to remove its members.

2. **PROHIBITION: Jurisdiction.** A court of appeals has no jurisdiction by original writ of prohibition to prohibit a circuit court from proceeding in a case where the appeal from a judgment in such case is to the Supreme Court.

3. ———: ———: **Certiorari: Constitutional Question: Appellate Jurisdiction.** Where the constitutionality of a statute has been brought by the pleadings into a *certiorari* case begun in the circuit court, the Court of Appeals has no authority to issue a writ of prohibition against such circuit court from proceeding further therein, for the constitutional question once in the case, unless abandoned, remains in it, and that being true an appeal

from a judgment therein would be to the Supreme Court, and hence the Supreme Court alone can issue the writ of prohibition.

4. ————: Pleadings: Concealment of Jurisdictional Question. The jurisdiction of the Court of Appeals to issue the writ of prohibition does not depend upon any misrepresentation or concealment of fact contained or not contained in the petition therefor, but upon the facts disclosed by the record in the particular case in which prohibition is sought. And where the petition for prohibition does not disclose that the constitutionality of a statute has been brought forward in a *certiorari* case pending in the circuit court, the Court of Appeals, if in fact the constitutional question has been lodged in the *certiorari* case, has no jurisdiction to issue a writ of prohibition therein.

5. ————: ————: ————: Right of Supreme Court to Issue. Where it appears to the Supreme Court by a petition presented to it that the Court of Appeals could not acquire jurisdiction by appeal or writ of error over a *certiorari* case pending in the circuit court, because of a constitutional question involved in the case, the Supreme Court has authority by its writ of prohibition to prohibit the Court of Appeals from undertaking, by its writ of prohibition directed to the circuit court, to entertain jurisdiction over the case pending in the circuit court, whether or not the Court of Appeals had the right to act upon the petition presented to it for the prohibition writ, and whether or not it did not appear from the petition presented to it that any constitutional question was involved in the case pending in the circuit court.

6. Supreme Court: Superintending Control. The Supreme Court has the same power to control the action of the courts of appeals with the respect to their jurisdiction, and to prevent them from taking judicial action in excess of their jurisdiction, that it has in regard to other courts of inferior jurisdiction.

7. ————: ————: Other Remedial Writs: Prohibition. The words of the Constitution giving the Supreme Court a general superintending control over all inferior courts with power to issue writs of *habeas corpus, mandamus, quo warranto* and other original remedial writs, include writs of prohibition.

8. COURT OF APPEALS: Prohibition: Control Over Inferior Courts. The language of the Constitution authorizing the St. Louis Court of Appeals to issue original remedial writs and to hear and determine the same, and giving it a superintending control over inferior courts, gives such court coequal authority with the Supreme Court in such matters where both have coordinate jurisdiction; but it does not mean that the Court of

Appeals has a superintending control over circuit courts in cases in which the Supreme Court has jurisdiction by appeal or writ of error—for instance, a case in which a constitutional question is involved.

## Prohibition.

RULE MADE ABSOLUTE.

*Bond, Marshall & Bond* for relators.

(1) The St. Louis Court of Appeals has no appellate jurisdiction over the *certiorari* case, nor has it any original jurisdiction by prohibition to interfere with the circuit court in the trial and determination of the *certiorari* case. State ex rel. v. Rombauer, 101 Mo. 499; State ex rel. Rombauer, 105 Mo. 104; State ex rel. v. Rombauer, 104 Mo. 624; Sanders v. Sack, 142 Mo. 260; State ex rel. v. Hill, 152 Mo. 239; State ex rel. v. Harter, 188 Mo. 527; State ex rel. v. Allen, 45 Mo. App. 557; State ex rel. v. Gauzhorn, 52 Mo. App. 223; Railroad v. McGregor, 53 Mo. App. 368; Railroad v. Ubank, 55 Mo. App. 337; Eckerle v. Wood, 95 Mo. App. 384. (2) The St. Louis Court of Appeals, while not denying the rule hereinbefore stated, and while not affirming or denying the allegations of petition that the record in the *certiorari* case pending in the circuit court showed that both parties therein had raised constitutional questions, and hence that the appeal from the judgment of the circuit court would lie not to the Court of Appeals, but to the Supreme Court, undertakes to justify the issuance of the preliminary rule by Judge Nortoni, and the maintenance of jurisdiction by the St. Louis Court of Appeals, on the ground that the petition for a prohibition presented to Judge Nortoni did not disclose the truth in reference to the issues on trial in the circuit court in the *certiorari* case. It is true that the petition for a writ of prohibition failed to disclose to Judge Nortoni, or the St. Louis Court of Ap-

peals, the fact, which here stands admitted by the pleading, that both parties raised constitutional questions in the circuit court, but the jurisdiction of the St. Louis Court of Appeals, either appellate or original, does not depend upon any misrepresentation or concealment of fact by either of the parties litigant, but depends upon the truth as disclosed by the proceedings in the *certiorari* case sought to be prohibited by the preliminary rule issued by Judge Nortoni. Consent of parties cannot confer jurisdiction in any case, and suppressions of the truth by one of the parties litigant cannot give the Court of Appeals jurisdiction over the circuit court in respect to cases where the appellate jurisdiction is lodged by the Constitution in the Supreme Court, and the St. Louis Court of Appeals has no jurisdiction by original writ of prohibition to interfere with the circuit courts in cases where the appeals from the judgments of the circuit courts lie to the Supreme Court. State ex rel. v. Eby, 170 Mo. 518; State ex rel. v. Aloe, 152 Mo. 466. (3) A constitutional question could not be raised in the appellate court. Gabbert v. Railroad, 171 Mo. 108.

*James F. Green, Alphonso Howe* and *J. W. Jamison* for respondents.

(1) It is beyond and in excess of the jurisdiction of the judges of the circuit court of the city of St. Louis to review by *certiorari* the proceedings of the Republican City Central Committee in removing members. The Primary Election Law (Laws 1901, p. 149) purporting to subject certain acts to review "by the appropriate remedy of *mandamus* or *certiorari*" does not undertake to amend the law in reference to either of those writs by giving it a function it did not before possess. State ex rel. v. Reynolds, 190 Mo. 585. Executive, administrative or ministerial acts of officers or bodies or boards or courts cannot be reviewed by *certiorari*.

State ex rel. v. Harrison, 141 Mo. 12; 2 Spelling, Inj. & Ex. Rem., secs. 1898 and 1954, n. 4. The parties who instituted the *certiorari* proceedings before Judges Sale and McDonald with a view to having the record of the committee removing them as committeemen quashed, attempted to prevent the action complained of in the *certiorari* proceedings by suing out a writ of prohibition in the St. Louis Court of Appeals against the majority members of the committee. Upon their petition a preliminary rule in prohibition was awarded against the majority members. The majority members filed a motion to quash and the same was sustained, it being expressly held by the Court of Appeals that prohibition would not lie in the case for the reason, among others, that the action of the. committee was not and could not be of a judicial nature. State ex rel. v. Witthoeft, 93 S. W. 284. The Republican City Central Committee is not a court, is not a judicial tribunal, it can issue no writ, it can try no case, render no judgment. Its functions are ministerial and executive. The only authority conferred upon such committee by the Primary Election Law is to issue calls for primaries and delegate conventions for the nomination of candidates and the election of committeemen, and make recommendations to the Board of Election Commissioners of suitable persons to be appointed judges and clerks of party primaries. It is in no sense a judicial body. State ex rel. v. Goodier, 195 Mo. 551. Even the Election Commissioners of St. Louis do not exercise judicial powers in selecting judges, clerks and challenges for a primary election from lists submitted to them by a managing committee of the party holding the same. The Board of Election Commissioners is an administrative body, with specific statutory powers and duties. Kalbfell v. Wood, 193 Mo. 675. The writ of *certiorari* issues only to inferior courts and to review only judicial actions. In the Matter of the Saline

County Subscription, 45 Mo. 52; Phelps County v. Bishop, 46 Mo. 68; 6 Enc. of Law & Proc., 753. It is not available to review the action of a public officer or body which is merely legislative, executive or administrative, although it may involve the exercise of discretion. People ex rel. v. Bush, 22 App. Div. 363; Matter of Many, 10 App. Div. 451; People ex rel. v. Austin, 20 App. Div. 1. The writ acts upon judicial bodies and their proceedings and not upon private controversies. State ex rel. v. Bland, 168 Mo. 1. *Certiorari*, under constitutional provisions, is strictly a common law writ of that name and only brings up the record of the court to which it is issued, and reaches only errors or defects appearing on the face of such record, and which are judicial in their nature. State ex rel. v. Smith, 101 Mo. 174. (2) It is provided by section 12, article 6 of the Constitution that the St. Louis Court of Appeals "shall have power to issue writs of *habeas corpus, quo warranto, mandamus, certiorari,* and other original remedial writs, and to hear and determine the same; and shall have a superintending control over all inferior courts of record in said counties. Appeals shall lie from the decisions of the St. Louis Court of Appeals to the Supreme Court, and writs of error may issue from the Supreme Court to said courts in the following cases only: . . . . In cases involving the construction of the Constitution of the United States or of this State," etc. By section 3 of the same article the Supreme Court is granted a general superintending control over all inferior courts, and is further authorized to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs and to hear and determine the same. By the amendment to the Constitution, adopted at the general election, held in November, 1884, it is provided as follows: The Supreme Court shall have superintending control over Courts of Appeals by *mandamus,* prohibition and *certiorari.* R. S. 1899, p. 94. It will be seen that under

said section 12, article 6 of the Constitution the St. Louis Court of Appeals is expressly authorized to issue remedial writs and to hear and determine the same, and has superintending control over inferior courts of record. The jurisdiction of the Court of Appeals as to these matters seems to be coequal with authority vested in the Supreme Court by section 2 of the same article. (3) It is only when the record, like a red light of danger, signals to the court its want of jurisdiction that prohibition will be awarded before requiring the petitioner to first suggest lack of jurisdiction to the court below. State ex rel. v. Hirzel, 137 Mo. 448; St. Louis, etc. v. Wear, 135 Mo. 264; State ex rel. v. Aloe, 152 Mo. 484; State ex rel. v. Eby, 170 Mo. 518. Relators have apparently fallen into error through a failure to discriminate between two lines of authority, the one holding that prohibition will not issue until lack of jurisdiction has first been pointed out by relator to the inferior court; the other holding the contrary view. But the principle running through all the cases is the same. In one class the court already had warning by the record before it. In the other, the court must have had notice from relator. The foundation of the rule seems to be that courts should deal fairly with each other. While it is a prerogative writ, emanating by authority of the sovereign power of the State, it has ever been used with great caution and forbearance. 16 Ency. Pl. and Pr., 1095. (4) The St. Louis Court of Appeals has original and concurrent jurisdiction with the Supreme Court to issue extraordinary writs, and, with the Supreme Court, is clothed with authority to exercise superintending control over inferior courts of record. State ex rel. v. Roumbauer, 101 Mo. 499. We desire in this connection to here call attention to the fact that in said cause one Sanders had commenced proceeding by *quo warranto* in the St. Louis Court of Appeals to oust Blakemore from the office of clerk of the circuit court of Dunklin county, which office was held to be ''an office

under this State'' within the meaning of sec. 12, of article 6 of the Constitution. It, therefore, affirmatively appeared upon the record in the Court of Appeals in that case that a constitutional question was involved. But prohibition was not awarded against the Court of Appeals until it had already passed upon the question raised and had given judgment of ouster, and was about to issue a writ to carry into effect the judgment. It was again held in State ex rel. v. Rombauer, 105 Mo. 103, that a *quo warranto* proceeding, involving a constitutional question, is within the final appellate jurisdiction of the Supreme Court, and the St. Louis Court of Appeals was, therefore, without jurisdiction to entertain or adjudicate it, and prohibition was issued from the Supreme Court to prevent the exercise of jurisdiction in said cause by the judges of the St. Louis Court of Appeals. State ex rel. v. Gill, 137 Mo. 681; 12 Ency. Pl. and Pr., 180, 181; Forsee v. Gates, 89 Mo. App. 577. (5) Before a plaintiff can obtain a writ of prohibition, it must be made to appear that he has called the attention of the court, whose proceedings are sought to be enjoined, to its lack of jurisdiction. 16 Ency. Pl. and Pr., 1128; State ex rel. v. Gill, 137 Mo. 631; Barnes v. Gottschalk, 3 Mo. App. 111; State ex rel. v. Laughlin, 9 Mo. App. 488; High on Extra. Legal Remedies (3 Ed.), sec. 765. Usually a plea to the jurisdiction should be first filed before writ of prohibition will issue, so the court may know the grounds made before the writ will lie. State v. Judges, etc., 29 La. Ann. 806; State v. Judges, etc., 44 La. Ann. 1083; in re Rice, 155 U. S. 396; State v. Judges, 42 Mich, 239; State v. District Court, 39 Pac. 794; Railroad v. Supreme Court, 59 Cal. 471. (6) Presumptions in favor of the jurisdiction of superior courts may be overcome only by recitals in the record showing affirmatively that the court was without jurisdiction. Montgomery v. Farley, 5 Mo. 233; McDonald v. Leewright, 31 Mo. 29; State v. Mackin, 51 Mo. App. 299; Gates v. Fuesten, 89 Mo. 13;

State ex rel. v. Stobie, 194 Mo. 14.   (7)   The Court of
Appeals has jurisdiction to issue writs of prohibition
to all inferior courts whether of record or not.  School
Dist. v. Burress, 84 Mo. App. 654; Hutchinson & Co. v.
Morris Bros., 89 S. W. 870.

BURGESS, J.—These three cases present the
same issues, and will, therefore, be considered to-
gether.

This is an original proceeding by prohibition, in-
stituted by two of the judges of the circuit court of the
city of St. Louis, namely, Moses N. Sale and Jesse Mc-
Donald, judges of divisions number seven and three of
said court, with whom are joined private relators inter-
ested as parties litigant in the litigation involved,
against respondents Nortoni, Bland and Goode, judges
of the St. Louis Court of Appeals.  A preliminary rule
in prohibition was issued on the 10th day of Septem-
ber, 1906, by two members of this court, returnable on
the ninth day of October, 1906.   The respondents have
filed their return to said preliminary writ, and the rela-
tors have filed their reply to said return and a motion
for judgment on the pleadings.

The petition, among other things, alleges that in
October, 1904, the private relators were elected mem-
bers of the Republican City Central Committee of the
city of St. Louis, pursuant to the provisions of the act
of March 13th, 1901, relating to primaries in cities hav-
ing over three hundred thousand inhabitants, each hav-
ing been elected by delegates from the several wards
when assembled in delegate convention, as members of
said committee from each of the wards of the city, and as
such were entitled to be and remain such members for a
term of two years thereafter; that thereafter and be-
fore August 13th, 1906, the majority of the members of
said city central committee, unlawfully and without
any authority or jurisdiction whatever, expelled them
(the minority of said committee) from membership

therein, and have ever since excluded them from their rights, privileges and franchises as such; that on the 13th day of August, 1906, the relator, Jesse A. McDonald, judge as aforesaid, granted unto said private relators herein a writ of *certiorari* directed against the majority members of said committee, commanding them to certify to said circuit court in division No. 7, on or before Tuesday, September 4th, 1906, all of the acts, proceedings, resolutions and records of said committee bearing in any manner upon the expulsion of said private relators as such members and officers and commanding them in the meantime to desist from interfering with the relators in any manner whatever in the discharge of their rights as members of said committee; that thereafter, on the 4th day of September, 1906, said majority members of said committee appeared as so commanded and filed a demurrer to the petition, setting up among other things that section 23 of the primary election law of 1901 violates section 1 of article 6 of the Constitution of Missouri; that thereupon said Judges Sale and McDonald heard said demurrer, fully argued by counsel on both sides, and took the same under advisement until the 5th day of September, 1906, at which time they overruled said demurrer and granted the respondents therein until Thursday, September 6th, to file a return to the order of *certiorari*, which said respondents did at said time, and by which return they admitted that relators and each of them were elected members of said Republican City Central Committee at a delegate convention of the Republican party of the city of St. Louis, on the 10th of October, 1904, as alleged in relators' petition, but deny that they were elected in accordance with the provisions of said primary election law, because they were not elected direct by and at a primary election, and further admitted that relators were expelled by them from said committee as charged, and further pleaded that section 23 of the said primary election law, by virtue of which the writ of

*certiorari* was issued, violates section 1 of article 6 of
the Constitution of Missouri, in that it pretends to con-
fer authority upon judges of the Supreme Court, courts
of appeals and judges of the circuit court to summarily
review certain acts of political committees and election
officers, whereas said section 1 of article 6 of said Con-
stitution confers all judicial power upon the courts of
the State and not upon the judges of the courts, and
further pleaded that section 23 is unconstitutional and
void, for the reason that no provision is made thereby
for any definite or certain form of notice of process to
be served upon defendants by which they may be
brought into court, but that under said section the var-
ious judges of the courts are authorized to designate
what notice of process shall be sufficient; that there-
upon respondents also filed a motion to quash the writ
of *certiorari,* alleging as grounds therefor, *inter alia,*
"that section 23 of the primary election law is uncon-
stitutional and void because it undertakes to confer
upon judges of courts powers which by section 1 of
article 6 of the Constitution of Missouri are exclusively
vested in courts of this State;" that thereupon the re-
lators therein filed a motion to quash the judgment or
order of expulsion aforesaid, alleging as grounds there-
for, *inter alia,* that the said committee had no power, au-
thority or jurisdiction under the laws of this State, and
particularly under said primary election law (Laws
1901, p. 149) to enter such an order, and because said
order and judgment did not constitute due process of
law and violated section 30 of article 2 of the Constitu-
tion of Missouri, and also violated the fourteenth
amendment to the Constitution of the United States;
that thereupon said court judges fully heard counsel
for relators and respondents upon said motions to
quash as aforesaid, and took the same under advise-
ment until September 7th, at 10 o'clock a. m.; that im-
mediately preceding the reconvening of said circuit
court on the 7th day of September, 1906, said Judges

Sale and McDonald were served with a preliminary rule in prohibition issued by Honorable Albert D. Nortoni, one of the judges of the St. Louis Court of Appeals, during the vacation of said court, whereby they were commanded to appear before the St. Louis Court of Appeals on Monday, September 24th, 1906, and show cause why a writ of prohibition should not be issued against them as prayed, and commanding them in the meantime to desist from further considering, passing upon or taking cognizance of the proceedings in *certiorari* aforesaid.

The petition further charges that said Albert D. Nortoni was without power, authority or jurisdiction to issue said preliminary rule in prohibition, and that the St. Louis Court of Appeals is without jurisdiction to hear or determine said matters and things or said controversy, and that said Court of Appeals has no appellate jurisdiction over the *certiorari* case aforesaid and no original jurisdiction by prohibition or otherwise to interfere with the trial and determination of said *certiorari* case by the said circuit court, for the reason that in said *certiorari* case both parties had raised and insisted upon constitutional questions which were primarily cognizable by the circuit court and whose rulings in that regard were only subject to review by the Supreme Court of Missouri, and further showed that said Nortoni in issuing said preliminary rule violated Rule 26 of the St. Louis Court of Appeals, which provides as follows: "Nor will any writ of prohibition be issued in any case whereof the Supreme Court has appellate jurisdiction."

On the return day of said writs respondents filed returns thereto in which they admit that heretofore, to-wit, on the 7th day of September 1906, respondent Nortoni, as judge of the St. Louis Court of Appeals, in vacation of said court, did grant and cause to be issued a preliminary rule in prohibition directed to Moses N. Sale and Jesse A. McDonald, judges of the circuit

court, city of St. Louis, as in the petition of relators herein alleged.

"2. Respondents further show unto the court that said preliminary rule in prohibition was awarded by the respondent Nortoni upon a statement of facts contained in the petition presented to him therefor, which said petition is in words and figures as follows:

" 'In the St. Louis Court of Appeals.

State of Missouri, ex rel. Charles H. Witthoeft, Nicholas Polito, Robert Walker, Joseph L. Schuler, Louis Becker, Harry Baer, Fred Heidecker, Edward Koeln, William Budde, Henry L. Weeke, George Reichmann, Herman Bader, Fred Smith, William Sanders, Louis Yengst and Jeptha D. Howe, Relators, v. Honorable Jesse A. McDonald and Honorable Moses N. Sale, Judges of the Circuit Court of the City of St. Louis, Defendants.

" 'The petition of Charles H. Witthoeft, Nicholas Polito, Robert Walker, Joseph L. Schuler, Louis Becker, Harry Baer, Fred Heidecker Edward Koeln, William Budde, Henry L. Weeke, George Reichmann, Herman Bader, Fred Smith, William Sanders, Louis Yengst and Jeptha D. Howe, represents to the court:

" '1. That the Republican party is a political organization which at the last preceding election polled more than ten thousand votes for Governor, in the city of St. Louis, State of Missouri.

" '2. That the Republican party in the city of St. Louis, Missouri, on the —— day of ——, 1904, duly elected the following persons as the general committee of said party, viz: W. P. Rudolph, 1st Ward; C. H. Witthoeft, 2nd Ward; N. A. Polito, 3rd Ward; Robert Walker, 4th Ward; J. L. Schuler, 5th Ward; John B. Owen, 6th Ward; Louis Becker, 7th Ward; Harry Baer, 8th Ward; F. H. Heidecker, 9th Ward; C. G. Besch, 10th Ward; Edw. Koeln, 11th Ward; Louis Alt, 12th Ward; W. H. Ludwig, 13th Ward; S. L. Kramer,

14th Ward; Norman Florshein, 15th Ward; W. J. Budde, 16th Ward; H. L. Weeke, 17th Ward; G. W. Reichmann, 18th Ward; Herman Bader, 19th Ward; Nat Goldstein, 20th Ward; George Gershon, 21st Ward; C. A. Day, 22nd Ward; H. C. Whelan, 23rd Ward; F. G. Smith, 24th Ward; J. T. Sanders, 25th Ward; L. Yengst, 26th Ward; J. D. Howe, 27th Ward; S. F. Myerson, 28th Ward; that the said persons and each of them were eligible to membership in said committee, and immediately upon their election duly qualified as such members and entered upon the discharge of their duties.

" 'That thereafter, to-wit, on the 12th day of October, 1904, said Republican City Central Committee was organized by electing the said William H. Ludwig chairman of said committee, and the said George Gershon secretary of said committee, and that said Ludwig and Gershon thereafter continued to act as such members and as chairman and secretary respectively until their removal as such officers and as members of said committee on the date and in the manner hereinafter stated.

" 'That said committee under the law and the rules and usages of the Republican party and under its own rules, has the authority to control and manage the affairs of the said Republican party in the city of St. Louis, and has the further power and authority to provide for the election and removal of the officers of said committee and to change such officers by a majority vote of the members of said committee.

" 'Relators further aver that the members of said committee were not elected for any definite term, but to serve until the biennial primary election of the Republican party to be held in the city of St. Louis in the fall of 1906, for the purpose of nominating candidates or electing delegates to the delegate convention to nominate candidates for circuit judge, sheriff and other city officers; but the election of said members was subject

to the right vested in a majority of the members of said
committee by party rules, usages and customs, to re-
move any members of said committee for party dis-
loyalty or for other good and sufficient party reasons.

" 'Relators further aver that ever since their elec-
tion to membership in said committee on the — day
of October, 1904, they have comprised and do now still
comprise the majority of said committee of the Repub-
lican party in the city of St. Louis, and as such under
the committee's rules and regulations and party usages
and customs, they were vested and clothed with the
power and authority to remove members of said com-
mittee for cause and to fill the vacancies thus created
by appointment, and also have at all times had the
right to elect the chairman and secretary and other of-
ficers of said committee and to remove such officers
whenever in their judgment it was deemed to the best
interests of said committee so to do.

" 'That heretofore, to-wit, on the 12th day of Sep-
tember, 1905, at a meeting of said committee duly held
on the said date under a call therefor and at which said
meeting the said William H. Ludwig, the then chair-
man of said committee, presided, and the said George
Gershon officiated as secretary, a resolution was offer-
ed by H. L. Weeke calling for the removal of the said
Gershon and Ludwig both as officers and members of
said committee, because they had sold and disposed of
the furniture and property of the committee without
its authority and in violation of its rules, and had
shown themselves to be unfit and incompetent to remain
members of the committee, and had admitted at said
meeting in the presence of the entire membership of
said committee then and there present that they had so
sold and disposed of the said furniture and property of
the committee without authority.

" 'And relators further aver that the aforesaid
resolution was offered by the said Weeke and its adop-
tion moved, and that said motion being duly seconded,

the said William H. Ludwig as chairman of said committee put said motion, and upon a roll-call of the membership of said committee by the said Gershon as secretary, it was announced by the said Ludwig as chairman that said resolution had been carried by a vote of seventeen for and eleven against; and relators aver that thereupon the said Ludwig and Gershon, after so proclaiming the result of said vote, immediately vacated their said office and their position as committeemen, and thereupon the committee proceeded to re-organize by the election of the said Jeptha D. Howe as chairman, and Fred H. Smith, member from the eighth ward, as secretary, and said committee further proceeded to fill the vacancies occasioned in said committee by the removal of the said Ludwig and Gershon.

" 'Relators further aver that ever since said date the said committee as re-organized has continued to act and discharge all the duties devolving upon said committee, and is now and ever since said date has been the duly and regularly constituted general committee of the Republican party within and for said city, and that the said Ludwig and Gershon have never participated in any of the proceedings of said committee since the date of their removal as aforesaid.

" 'Relators further aver that the proceedings under which the said Gershon and Ludwig were removed as members and officers of said committee in all things conformed to the rules, regulations and requirements of the Republican party and of said committee, and that said rules were also complied with in the filling of the vacancies occasioned by the said removals.

" 'Relators further aver that notwithstanding the premises aforesaid, the said Ludwig and Gershon in the vacation of the circuit court of the city of St. Louis, on the 30th day of August, 1906, presented to respondent, the Honorable Jesse A. McDonald, one of the judges of the circuit court of the city of St. Louis, in chambers, their petition against the relators as composing a ma-

jority of the Republican City Central Committee of the city of St. Louis for a writ of *certiorari* directing and commanding relators to certify to the circuit court of the city of St. Louis all of the acts, proceedings, resolutions and records of said committee bearing in any manner on the matters hereinbefore mentioned, and that upon the hearing thereof, said actions of the defendants (relators herein) be quashed, and further prayed for an order directing that pending the determination of the *certiorari* proceedings, defendants and each of them be restrained from interfering in any manner with the said Ludwig and Gershon as members and officers of said committee.

" 'Relators further aver that upon consideration of said petition, the respondent, the Honorable Jesse A. McDonald, as judge of the said circuit court, in chambers, did on the said 30th day of August, 1906, grant the prayer of said petition, and then and there ordered and directed that a writ of *certiorari* issue under the hand and seal of the clerk of said circuit court of the city of St. Louis directed to relators commanding them to certify to the circuit court of the city of St. Louis, and in division number seven thereof, which said division is presided over by the respondent, the Honorable Moses N. Sale, who is one of the judges of the said circuit court, of said city, on or before Tuesday, September 4, 1906, at ten o'clock of that day, all of the acts, proceedings, resolutions, and records of the Republican City Central Committee of the city of St. Louis, bearing in any manner upon the matters set out and charged in said petition and hereinbefore referred to, and that relators herein and each of them desist, pending the determination of said proceeding, from interfering with the said plaintiff in any manner in the discharge of his duties and the exercise of his rights and privileges as a member and officer of the said Republican City Central Committee, which said writ and

201 Sup—2

order were duly served upon these relators on the said 30th day of August, 1906.

" 'Relators further aver that in the awarding of said writ and order, said respondent, McDonald, acted in excess of and beyond his jurisdiction as a judge of the circuit court of the city of St. Louis and in excess of and beyond the jurisdiction of the said .circuit court, and that both said respondent judges and the said circuit court of the city of St. Louis were and are without jurisdiction to award the aforesaid writ of *certiorari* and order, or to review by, through or under said writ the aforesaid acts of relators in the trial and removal of the said Ludwig and Gershon as members and officers of said committee under charges and after the hearing hereinbefore mentioned.

" 'Relators further aver that the said respondent McDonald further acted in excess of and beyond his jurisdiction and authority in ordering and directing relators and each of them, pending the determination of said *certiorari* proceedings, to desist from interfering with the said expelled committeemen in the exercise of their alleged rights and privileges as members of said committee.

" 'Relators further aver that they had no notice of said proceedings in chambers before the said respondent, McDonald, and that he awarded the aforesaid writ and made the aforesaid order *ex parte* and without notice to them.

" 'Relators further aver that their said committee is not a judicial body and does not exercise judicial or quasi-judicial functions or powers, and that in the removal of the said ———— as a committeeman and as an officer of said committee, relators acted within their authority and in conformity to the rules and regulations of their committee and of the Republican party, and that their actions in the premises were entirely non-judicial.

" 'Relators say, that by reason of the premises,

said writ and order were improvidently granted, and that the said respondents, McDonald and Sale, acted without jurisdiction, and that the said writ and order are therefore void. But relators aver, that unless said respondents and each of them are restrained, they will proceed to review the actions of relators in removing the said Ludwig and Gershon as members of said committee. And they further aver that said respondents did, by virtue of an order made by them, direct and compel relators to produce before respondent, Moses N. Sale, in the circuit court, on Thursday, the 6th day of September, 1906, the minutes, resolutions and records kept by the said committee, and relators were required to exhibit all of said documents and papers in court, and that said cause against relators is still pending before the said respondents as judges, and that unless they are restrained and prohibited by this honorable court, said respondents will still further exercise jurisdiction in said cause against relators by compelling them to reinstate said Ludwig and Gershon in office as members of said committee, and compel relators to recognize them as members of said committee.

" 'And relators further aver and charge that said respondents as judges of the circuit court of the city of St. Louis, and said circuit court, are without any jurisdiction or authority to so review the acts of relators, and that the entire proceeding is in violation of the rights of relators as members of said committee, and are illegal and void.

" 'Wherefore, your petitioners, imploring the aid of this honorable court, pray to be relieved, and that they may have the State's writ of prohibition directed to said respondents, and each of them, to prohibit them and each of them from proceeding further in the premises, and from attempting to review the aforesaid acts of relators, and from further in any manner interfering with the relators, as members of the said city cen-

tral committee, and for such other and further orders in the premises as may be right and proper.'

"3. For further return, it is denied that respondent Nortoni acted in excess of or beyond his jurisdiction as judge of the St. Louis Court of Appeals in the granting of said preliminary rule in prohibition against the judges of the circuit court hereinbefore mentioned; deny that, in so awarding said writ, said Nortoni violated any provision of the Constitution or any law of the State of Missouri, and further deny that, in the awarding of said preliminary writ, Rule 26, or any other rule of the St. Louis Court of Appeals, was violated as in the petition and writ alleged.

"4. Respondents further show unto the court that it was not made to appear from any fact or averment contained in the petition presented to the said Nortoni for a preliminary writ of prohibition that any question involving the construction of the Constitution of the United States, or of this State, had been raised in the *certiorari* proceeding in the circuit court of the city of St. Louis or before the judges thereof, by demurrer, return, motion or other pleading of the parties to said cause, and the respondents say that even if it be true, as alleged in the petition and writ herein, that such constitutional questions were so raised, but as to the truth of the averments with respect to such issues respondents have not sufficient knowledge to form a belief, and, therefore, neither admit nor deny said averments; respondents, nevertheless, had and still have as judges of the St. Louis Court of Appeals jurisdiction in the premises until it shall have been made to appear to respondents or to the St. Louis Court of Appeals that the preliminary rule aforesaid had been improvidently granted by the respondent Nortoni, because a decision of the issues by the said Court of Appeals would involve the construction of the Constitution of the United States or of the State of Missouri.

"Wherefore, respondents pray that the prelimi-

nary rule aforesaid be quashed, and the proceeding dismissed, and that they be discharged with their costs.''

In the reply to the return of respondents, relators admit that on the 24th of September, 1906, and before the filing of the return herein they filed a return in the St. Louis Court of Appeals to the preliminary rule aforesaid issued by said Nortoni, wherein and whereby the St. Louis Court of Appeals was informed of the fact that the petition upon which said preliminary rule was issued had concealed from said Nortoni and said court the fact that both parties to the *certiorari* case in the circuit court had raised constitutional questions, fully setting forth therein the constitutional questions aforesaid, and further showing that in issuing said preliminary rule said Nortoni had done so in violation of said Rule 26 of said court and said reply herein further averred that the right of said Nortoni to issue said preliminary rule, or of the Court of Appeals, to assert or attempt to maintain jurisdiction, depends not upon the misrepresentations or concealments of the truth contained in the petition for a writ of prohibition, but upon the fact and the truth as it existed in said *certiorari* case, and that the test of jurisdiction of any court is as to the truth and not to the suppression or mis-statement thereof in any application for a writ.

The reply further shows that since the happening of the events stated, the circuit court entered judgment in the *certiorari* case in favor of relators, and that the defendants have appealed that case to the Supreme Court.

The motion for judgment herein is based upon the following grounds:

''FIRST. Because the return of the respondents herein is wholly insufficient in law and fails either to affirm or deny any of the facts stated in the petition herein, and fails to show that the St. Louis Court of Appeals, or said Nortoni, as judge thereof, had any jurisdiction, power, right or authority to issue the pre-

liminary rule in prohibition against these relators, or to further assert or maintain jurisdiction in said prohibition case.

"SECOND. Because the suppression and concealment of the truth by the relators in the prohibition case in the St. Louis Court of Appeals against those relators did not and could not confer jurisdiction upon that court or any of the judges thereof, but their jurisdiction depended entirely upon the truth and the fact as the same appeared from the records of the circuit court in the *certiorari* case.

"THIRD. Because prior to the filing of the return herein, the respondents were fully advised that said St. Louis Court of Appeals had no jurisdiction in said prohibition cases, for the reason that in the *certiorari* cases in the circuit court both parties had invoked the protection of the Constitution of the United States and of the State of Missouri, and prior to the issuance of the preliminary rule in prohibition by said Nortoni that these relators as judges of the circuit court had actually considered, passed upon and determined said constitutional questions upon a demurrer filed to the petition for a *certiorari,* and that since the filing of said return by these relators in the said Court of Appeals there has been no denial of the facts set up in said return, nor of the showing therein made, that the relators therein, Witthoeft et al., had imposed upon said Nortoni and said court by intentionally concealing the truth in respect to the controversy then undergoing adjudication in the circuit court of the city of St. Louis."

The position of relators is that the St. Louis Court of Appeals has no appellate jurisdiction over the *certiorari* case in question, nor any original jurisdiction by prohibition to interfere with the circuit court in the trial and determination of the *certiorari* case. Upon the other hand, it is contended by the respondents in this case that, as *certiorari* is not appropriate to review the acts and proceedings of non-judicial bodies

and officers, such as the Republican Central Committee of the city of St. Louis, whose functions are entirely ministerial, administrative or executive, the circuit court was without jurisdiction to determine the *certiorari* case, and that the writ against the judges of said court was properly granted.

That respondents' position is the correct one in ordinary cases we are willing to concede, but when questions of a constitutional character are involved, which go to the validity of the law, they become vital questions in the case, for an "unconstitutional law is no law at all," and, if there was no valid law, then the Republican Central Committee was itself without authority to remove its members and officers, and the circuit court, being of general jurisdiction, unquestionably had the right to pass upon that question which went to the root of the action of said committee in removing its members and officers.

In fact, it is admitted by respondents that if the facts be as stated in the petition presented to two of the judges of this court in vacation, upon which the preliminary writ in this case was issued, then questions of constitutional law had been raised in the proceedings in the circuit court, and that unless the parties in said causes *abandoned those issues,* or failed to preserve them by proper exception for review by the Supreme Court, the Supreme Court would have appellate jurisdiction in said causes.

While the respondents do not in their return either affirm or deny the allegations of the petition for the preliminary writ to the effect that the record in the *certiorari* case pending in the circuit court showed that both parties therein had raised constitutional questions in consequence of which an appeal in said cause would lie from the circuit court to the Supreme Court and not to the Court of Appeals, they nevertheless undertake to sustain the action of Judge Nortoni, and to maintain the jurisdiction of the St. Louis Court of Appeals, on

the ground that the petition for a prohibition did not disclose the fact that there were constitutional questions involved.

While it is true that the petition for the writ of prohibition which was presented to Judge Nortoni upon which he acted in issuing the writ, did not disclose the fact, which stands admitted by the return of respondents, that both parties raised constitutional questions in the circuit court, the jurisdiction of the Court of Appeals, either appellate, or with respect to writs of prohibition and other original writs, does not depend upon any misrepresentation or concealment of fact by parties litigant, but depends upon the facts disclosed by the record in the particular case.

It is axiomatic that jurisdiction in any case cannot be conferred by mere agreement respecting the subject-matter of controversy, nor can the concealment or failure to disclose the facts as they really exist by one of the parties litigant confer jurisdiction on the Court of Appeals over the circuit court in cases where the appellate jurisdiction is conferred by the Constitution upon the Supreme Court; nor has the St. Louis Court of Appeals jurisdiction by original writ of prohibition to prohibit the circuit court in cases where the appeal from the judgment of these courts lies to the Supreme Court. [State ex rel. v. Aloe, 152 Mo. 466.]

But respondents contend that Judge Nortoni had the right to act upon the petition for prohibition as it was presented to him, and, as it did not appear therefrom that any constitutional question was involved in the *certiorari* case, that he was justified in issuing the prohibitory writ. Conceding this position to be correct, it must needs follow that when relators presented their petition to two members of this court for prohibitory writs against respondents, and it appeared therefrom that the Court of Appeals could acquire no jurisdiction, by appeal or writ of error, over the *certiorari* case, because of constitutional questions being

involved, *they* had the right and authority to prohibit by the writ of prohibition the Court of Appeals from entertaining jurisdiction of that case, and to determine that, because of the want of authority in Judge Nortoni to issue the writ, it was improvidently granted.

If the petition for the prohibitory writ which was presented to Judge Nortoni had shown upon its face that the Court of Appeals did not have nor could acquire jurisdiction of the *certiorari* case upon appeal or writ of error, and notwithstanding this fact he issued the preliminary writ, it will hardly be contended that the Supreme Court, upon application of the relators, would not have had the power to grant a prohibitory writ against Judge Nortoni, and his associates, as judges of the Court of Appeals, prohibiting them from further maintaining jurisdiction, because of the want of jurisdiction apparent from the face of the petition.

By section 3 of article 6 of the Constitution of Missour, the Supreme Court is given a general superintending control over all inferior courts, with power to issue writs of *habeas corpus, mandamus, quo warranto* and other original remedial writs, which, of course, includes writs of prohibition, and it has the same power to control the action of the Courts of Appeals with respect to their jurisdiction, and to prevent them from taking judicial action in excess of their jurisdiction, that it has as regards other courts of inferior jurisdiction. That the Courts of Appeals have the same power to issue original writs, and have the same control of all inferior courts that the Supreme Court has, when they have jurisdiction, or are not proceeding in excess of their jurisdiction, is not controverted, but that is not this case.

Prior to the constitutional amendment of 1884, the St. Louis Court of Appeals had power to issue writs of *habeas corpus, quo warranto, mandamus, certiorari,* and other original remedial writs and to hear and de-

termine the same, and as the law then stood an appeal would lie from the judgment of the Court of Appeals in such cases to the Supreme Court; and BLACK, J., in speaking for the court with respect to this amendment in the case of State ex rel. Blakemore v. Rombauer, 101 Mo. 499, said:

"It remains to be seen, whether the amendment adopted in November, 1884, deprived the Court of Appeals of its original jurisdiction in such a case. . .

"The amendment made some changes in the organic law which are so obvious as to require no more than a statement of them; that is to say: First. The cases enumerated in section 12 of article 6 now go directly from the trial courts to this court by appeal or writ of error, and not first to the Court of Appeals, as was formerly the case. All other cases which are reviewable go to the Court of Appeals, and the judgments of that court are final. Second. The only control which this court has over that court while in the exercise of its appellate powers is a supervisory one, to be exercised by *mandamus,* prohibition and *certiorari* according to the usages of law. Third. This superintending control of the Court of Appeals over inferior courts, as granted in said section 12, is cut down by the fifth amendatory section, which gives this court the exclusive superintending control over the trial courts in all those cases reviewable by this court; so that the Court of Appeals has now no power to use the original remedial writs by way of a superintending control over the trial courts in matters reviewable by this court.

"There is another change which is not so clearly expressed by the amendment, but which in our opinion is sufficiently obvious, namely, that this court is still the final arbiter in all those controversies which are specified in said section 12, no matter in what court they may originate. Before the amendment this court had appellate jurisdiction in all cases involving the construction of the Constitution, and the other specified

cases, including cases involving the title to an office un-
der this State. It had such jurisdiction though the case
originated in the Court of Appeals. There is nothing
in the amendment which can by any fair construction
be said to take away from this court appellate power
in all such cases. We, therefore, come to this: the
Court of Appeals either has no original jurisdiction
over the cases specified in section 12 of article 6 of the
Constitution; or an appeal must still lie from that court
to this in the cases specified in that section when com-
menced in the Court of Appeals.

"The question to which we are thus brought is by
no means free from difficulty, and arguments may be
offered to support either conclusion; but in our opinion
the first is the correct one; that is to say, the Court of
Appeals has no original jurisdiction, by virtue of its
power to hear and determine original writs, to deter-
mine those controversies over which this court has ap-
pellate jurisdiction. Our reasons, therefore, are these:
The words of section 5 of the amendment, 'all causes
or proceedings reviewable by the Supreme Court,' have
reference to and must mean those cases specified in sec-
tion 12 of article 6, and which were before reviewable
by this court. The clear inference is that this court
shall still have appellate power in all such cases. But
how is this power to be exercised? The section goes on
to say that in all such cases writs of error shall run 'to
the circuit courts, and to courts having the jurisdiction
pertaining to circuit courts,' and appeals shall lie from
such 'trial courts directly' to the Supreme Court. The
expressions 'circuit courts and to courts having the ju-
risdiction pertaining to circuit courts,' and 'trial
courts,' mean the same thing. The Court of Appeals
is not a 'trial court;' it is an appellate court. The new
section, therefore, provides from what courts appeals
shall lie in the specified cases, and to what courts writs
of error shall run, and the Court of Appeals is not
named as one of them. The language used excludes the

notion that this court has any appellate jurisdiction from the Court of Appeals.

"The fifth amendatory section is built upon the assumption and theory that all cases which can be reviewed by this court on appeal or writ of error will originate in the trial courts. The conclusion seems to us clear that this court has no jurisdiction by appeal or writ of error in any case determined by the Court of Appeals; and if this be true, and we are right in the view before expressed that this court remains the final arbiter in all those cases enumerated in section 12 of article 6 of the Constitution of 1875, it must follow that the Court of Appeals is without jurisdiction, original or appellate, in any such case. Its original, as well as appellate, jurisdiction is confined to those cases the subject-matter of which is not within the appellate jurisdiction of this court.

"While the amendment does not, in express terms, repeal any specified portion of the Constitution of 1875, still the eleventh amendatory section does repeal all prior inconsistent provisions. A construction must be accorded to the fifth and other amendatory sections which will give full force and effect to all of their provisions, and in doing this we are led to the result before stated—a result which is in keeping with our judicial appellate system when considered as a whole."

The doctrine announced in that case has been adhered to ever since—in fact never called in question. [State ex rel. Rogers v. Rombauer, 105 Mo. 104; State ex rel. Macklin v. Rombauer, 104 Mo. 619; State ex rel. Frisby v. Hill, 152 Mo. 234; State ex rel. v. Harter, 188 Mo. 516.]

Respondents, however, contend that as by section 12 of article 6 of the Constitution, the St. Louis Court of Appeals is expressly authorized to issue original remedial writs and to hear and determine the same, and has superintending control over inferior courts of record; that with respect to such matters the authority of

said court seems to be coequal with that vested in the Supreme Court by section 2 of the same article. This is doubtless true where both courts have coordinate jurisdiction, but not otherwise, as in the case at bar. But it is said, as the petition upon which Judge Nortoni granted the preliminary writ against the relators in this case did not disclose upon its face that a constitutional or other question over which the St. Louis Court of Appeals had no jurisdiction, under the Constitution, was presented for decision, that the writ in this case should not have been awarded, without its having been first made to appear that relators first called the attention of Judge Nortoni to the lack of jurisdiction to grant the writ against these respondents.

Preliminary writs of prohibition when granted in vacation, as in this case, are frequently without notice, as they go against some judge or court acting or proceeding to act in excess of his or its jurisdiction, and in such case it is not the practice to hear suggestions in opposition to the issuance of the writ. Besides, on the return day of said writ, to-wit, September 24, 1906, and before the return by respondents to the preliminary rule in this case, relators herein made return in the St. Louis Court of Appeals to said preliminary rule issued by Judge Nortoni, wherein and whereby the St. Louis Court of Appeals was informed of the fact that the petition upon which said preliminary rule was issued had concealed from said Nortoni and said court the fact that both parties to the *certiorari* case in the circuit court had raised constitutional questions, fully setting forth therein the constitutional questions aforesaid, and further showing that in issuing said preliminary rule said Nortoni had done so in violation of said Rule 26 of said court; yet, by their return to the preliminary rule issued in this case, respondents seek to maintain the validity of the rule issued by Judge Nortoni, and ask that the writ issued by the two members of this court be quashed.

Our conclusion is that the preliminary rule in prohibition issued by the two members of this court should be made absolute.

It is so ordered.

All concur, except *Lamm, J.*, not sitting.